THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE M. REISINGER, Defendant-Appellant.

Fifth District   No. 80-216

Opinion filed May 10, 1982.

John H. Reid and Jean Marie Reyes, both of State Appellate Defender's Office, of Mt. Vernon, and Rebecca Ann Whittington, research assistant, for appellant.

Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of Mt. Vernon, for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

The defendant, George M. Reisinger, was charged by an information filed October 13, 1977, with the offenses of burglary and theft of property with a value in excess of $150. A jury found the defendant guilty of the theft count and he was sentenced to an indeterminate term of imprisonment of one to five years to run consecutively to sentences previously imposed in the State of Ohio for sexual battery and escape. From his conviction and sentence the defendant has appealed.

The defendant was brought to Illinois from Ohio for trial pursuant to section 3—8—9 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—8—9). At his first appearance on October 5, 1979, the defendant informed the trial court that he had retained counsel to represent him. A short time later, defendant's retained counsel filed a motion to withdraw, alleging, *inter alia*, that defendant desired to either appear *pro se* or with the assistance of other counsel. The motion to withdraw was granted and the trial court appointed the public defender, Barbara Adams, as defendant's attorney.

On October 29, 1979, a preliminary hearing was held wherein defendant received a copy of the information and was admonished as to the possible penalties if convicted of the charged offenses. Ms. Adams represented the defendant at various other pretrial hearings in which defendant took an active part by presenting legal arguments of his own. On February 27, 1980, the defendant indicated that he was dissatisfied with his present counsel. The trial court admonished defendant of his

right to counsel and informed him that he could have another attorney appointed to represent him if he wished. The defendant elected to dismiss Ms. Adams and the trial court appointed another public defender, John Coady, to represent him.

On April 3, 1980, Mr. Coady moved for leave for the defendant to argue a number of *pro se* motions which the defendant had filed. Defense counsel's request was denied, whereupon the defendant dismissed Mr. Coady. Thereafter, the court requested Mr. Coady to remain as standby counsel and then allowed the defendant to argue the motions himself.

After Mr. Coady's dismissal, defendant continued to appear *pro se* and filed additional pleadings for the trial court's consideration. On April 7, 1980, he filed a *habeas corpus* petition. On April 10, 1980, the day set for his trial, the trial court set the defendant's petition for a hearing at the conclusion of the trial. The defendant thereupon refused to proceed to trial and, at one point, had to be forcibly brought back into the courtroom by the sheriff. The following colloquy occurred:

> "THE DEFENDANT: I wish to make a statement to the Court and to the press."

Whereupon, the following conference was held at the bench between the court and counsel out of the hearing of the jury:

> "MR. COADY: What he wants to do, he tells me, Judge, is to go to the jail. He doesn't want to be present at the trial. And he said that he wants to do so after making a statement to the Court and he has prepared a written statement that he wants to give to the press.
>
> As I understand it, I think he does have a right to waive his presence at trial. He can't be forced to remain in the courtroom.
>
>       * * *
>
> MR. COADY: Now he did say these 3 things: He says he wants to hand a written statement to the Court, make a statement to the Court. I don't think necessarily in front of the jury. And he wants to go to jail."

Thereafter, the following proceedings were held in open court in the presence and hearing of the jury:

> "THE DEFENDANT: In the presence of the jury.
>
> MR. COADY: George, do you want to waive your presence or are you just saying, 'Take me to jail'?
>
> THE DEFENDANT: I'm just saying take me to jail.
>
> THE COURT: You understand you've got a right to be here for your trial and you've also got a right to remain away from it if you so desire. You understand that?
>
> THE DEFENDANT: I understand that.
>
> THE COURT: All right.
>
> MR. COADY: Judge, just to clarify the record. I think he said he

wanted to waive his presence. He says now he does not wish to do that, he just wants to go to jail. And I think your statements have clarified that.

THE COURT: If you want to waive your right to be here you may do so. If you voluntarily waive your right to be present for your trial, you may do so. But you're not going to put any qualifications on it. You can be here or you can be in jail. But if you don't waive your right to be here in open court in plain English, then you're going to remain here.

THE DEFENDANT: I think my statement will show my reason as to wanting to be removed to the county jail.

THE COURT: Proceed with the selection of the jury here. You just remain here unless you voluntarily waive your right to be present for your trial.

THE DEFENDANT: I voluntarily waive my right to be present for the trial.

THE COURT: All right, now make your statement."

The defendant then argued that the trial court's failure to hear argument on his April 7 *habeas corpus* petition constituted an unlawful suspension of the writ and, therefore, he would refuse to stand trial. The trial court then ordered that defendant be taken back to jail as he requested. Just prior to leaving the courtroom the defendant stated, "* * * the only thing I wish to say before leaving the courtroom is to this man sitting here. He is not my legal, lawful attorney. There is a case law citing [sic] that he's not my attorney and I refuse to have him defend me in any manner in this courtroom."

The defendant's standby counsel requested that the trial court clarify his responsibilities under the circumstances. The trial court replied, "I don't believe you have any function here at all, Mr. Coady. * * * [A]fter he dismissed you—the only purpose you served were [sic] to answer questions about his legal rights. Therefore, you may be dismissed."

The matter proceeded to trial in the absence of the defendant and his standby counsel.

At trial, the evidence established that on October 6, 1977, the mobile home of Dennis Cruthis and his wife was broken into and various specified items of personal property taken. Arthur Heidke, a Madison County deputy sheriff, testified that he and other officers searched defendant's house pursuant to a search warrant and found the Cruthis property. Charles L. Boerckel testified that, while he was staying at defendant's house during the first week of October 1977, he observed the defendant and others unloading a color television and a stereo set from a car. Mr. Boerckel identified the property he observed as being part of the personalty taken from the home of Mr. and Mrs. Cruthis. The jury

returned a verdict of guilty for the offense of theft over $150 but could not reach a verdict on the burglary charge.

On May 12, 1980, the trial court entered defendant's sentence in the following manner:

> "Very well, Mr. Reisinger, it's the duty of the Court at this time, having due regard for the character of the offender, the nature and circumstance of the offense and public interest, all those matters have been considered. And I do find that a sentence of imprisonment is the most appropriate disposition, any factors in aggravation being that you have a history of prior criminal activity. And if crimes likes yours are not punished, others might be—think it's a good idea to commit the same crime.
>
> So I'm not going to give you the extended term. I'll reject that argument. However, in my opinion as to your best interest as to a consecutive sentence, I would give you the 1 to 5 under the old law. In other words, you would be sentenced to the Department of Corrections for imprisonment in the penitentiary for not less than 1 year nor more than 5 years. And that sentence is to run consecutive to your imprisonment in the State of Ohio.
>
> The reason being that you do have a history of criminal offenses. I feel that this crime in Illinois should be punished. If I gave you a concurrent sentence to that in Ohio there would be no punishment for this crime."

■■ The defendant first contends that his voluntary absence from trial cannot be construed as an effective waiver of his right to be present. He argues that the record fails to establish "an intentional relinquishment or abandonment of a known right or privilege" (*Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023) since the trial court failed to admonish the defendant as to the consequences of his decision. Virtually the same contention was rejected by the United States Supreme Court in *Taylor v. United States* (1973), 414 U.S. 17, 38 L. Ed. 2d 174, 94 S. Ct. 194, and we find this determination dispositive of this issue. It is undisputed that the defendant voluntarily elected to absent himself from the courtroom after the trial commenced. Under such circumstances it has uniformly been held that the trial court is free to proceed with the trial. *Taylor v. United States; People v. Davis* (1968), 39 Ill. 2d 325, 235 N.E.2d 634.

The defendant, relying on *Davis* and section 115—4.1(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 115—4.1(a)), next argues that there is an absolute prohibition against trials *in absentia* when the defendant is not represented by counsel. We disagree. Neither *Davis* nor section 115—4.1(a) is applicable to the circumstances of this case.

In *Davis*, the defendant was not in custody and failed to appear, and the court held that it was error for the trial court to proceed to trial on the presumption that the defendant had voluntarily waived his presence and his right to counsel. In the case at bar, the defendant was personally present in open court represented by counsel and intentionally and unequivocally waived his right to be present and expressly rejected representation by counsel.

■■ Further, section 115—4.1(a) has no application to the instant case. This provision by its terms applies only in two situations: (1) where, as in the *Davis* case, the defendant "fails to appear for trial"; and (2) where the defendant has "forfeited his bail bond or escaped from custody" after the trial has commenced. (Ill. Rev. Stat. 1979, ch. 38, par. 115—4.1(a).) Neither of the circumstances contemplated by the statute is present in the case at bar, and it is, therefore, not controlling. Additionally, we note that to construe section 115—4.1(a) to mandate that a defendant be represented by counsel when tried *in absentia* regardless of the defendant's wishes would infringe on the defendant's constitutional right not to have counsel forced upon him. See *Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.

The defendant had retained counsel and two appointed public defenders represented him in the instant case before he elected to proceed *pro se*. He was obviously aware of his right to counsel and right to represent himself. He exhibited a fair amount of legal sophistication and used every opportunity to enforce his rights. When it became apparent to the defendant that his trial would commence, he demanded both his own absence and the dismissal of his standby counsel. The record establishes that the defendant deliberately and knowingly exploited his right to counsel (see *People v. Weston* (1970), 9 Cal. App. 3d 330, 334-35, 87 Cal. Rptr. 922, 924-25, discussing the ploy of "Waive the Lawyer") and consciously sought delay. As the Illinois Supreme Court recently observed the right of representation "may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime." (*People v. Myles* (1981), 86 Ill. App. 3d 260, 268, 427 N.E.2d 59, 62-63.) Both the right to counsel and the right to self-representation are unquestionably valuable rights and should be scrupulously protected. However, the record in the case at bar indicates a knowing and intelligent waiver of both these rights.

The defendant additionally argues that since he was not expressly admonished pursuant to Supreme Court Rule 401(a) (73 Ill. 2d R. 401(a)), he could not make a knowing and voluntary waiver of counsel. We find our decision in *People v. Black* (1979), 68 Ill. App. 3d 309, 385 N.E.2d 899, dispositive of this contention. In *Black*, the defendant elected to proceed *pro se* with the public defender as standby counsel. At trial, the defendant

was permitted to make a statement in front of the jury in which he alleged, *inter alia,* that he was denied his constitutional rights and, therefore, would not participate in his trial. The defendant presented no defense. This court rejected the defendant's claim that he did not intelligently waive his right to counsel and found that although defendant was not admonished pursuant to Supreme Court Rule 401(a), the requirements of that rule were substantially complied with because the court went out of its way to afford defendant counsel. As in *Black,* the present defendant is an experienced criminal litigant, and the record as a whole demonstrates that he was aware of the information contained in Rule 401(a). Hence, we find no error in the trial court's failure to strictly comply with this rule.

■■ The defendant, citing section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)), suggests that the record fails to support a conclusion that the trial court believed that a consecutive sentence was required to protect the public from further criminal conduct. (*People v. Zadel* (1979), 69 Ill. App. 3d 681, 387 N.E.2d 1092.) The trial court expressly indicated that it considered the defendant's prior criminality, the nature and circumstances of the offense and the public interest when it sentenced defendant. In light of these considerations, the trial court concluded that punishment for his Illinois offense was warranted and, therefore, imposed a consecutive sentence as the only means of punishing defendant for the Illinois offense because a concurrent sentence may have resulted in defendant's release without imprisonment for the Illinois offense. The purpose of section 5—8—4(b) is to allow the reviewing court to determine the reasons for the imposition of a consecutive sentence. (*People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930.) We find this purpose satisfied in the instant case and that the trial court adequately specified its reasons for imposing a consecutive sentence. We reject the defendant's suggestion that the trial court must make a ritualistic statement that a consecutive sentence is required to protect the public and we find no abuse of discretion. See *People v. Cox* (1980), 82 Ill. 2d 268, 280-81, 412 N.E.2d 541, 548.

The defendant's reliance on *People v. Zadel* is misplaced. In that case, the out-of-State sentence to which the Illinois sentence was made consecutive was a life sentence under which the defendant was released only when the New Jersey authorities determined that he was rehabilitated. The court found that it was error for the trial court to impose an Illinois sentence which would require the defendant to serve an additional term after the New Jersey authorities had found him to be rehabilitated. The reasoning employed in *Zadel* is not applicable in the case at bar.

■■ The defendant further maintains that his consecutive sentence is invalid since it exceeds the aggregate maximum permitted under section

5—8—4(c)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(c)(1)). The State contends that the defendant's sentence was consecutive to sentences imposed in the State of Ohio and, therefore, section 5—8—4(c)(1) does not apply. (See *People v. Presley* (1979), 67 Ill. App. 3d 894, 385 N.E.2d 181; *People v. Dye* (1977), 69 Ill. 2d 298, 371 N.E.2d 630.) We are persuaded that the State's construction of this section is correct. Both the decided cases and the plain language of the statute suggest that section 5—8—4(c)(1) applies only to indeterminate sentences imposed under Illinois law.

■■ Defendant argues in the alternative that if we accept the State's construction of section 5—8—4(c)(1), then the statute is unconstitutional because it denies defendant equal protection of the law. The defendant has not demonstrated that he is a member of a suspect class nor has he shown that any fundamental right is involved and we reject defendant's assertion that strict scrutiny of the statute is required. (See *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 368 N.E.2d 903.) The question then is whether there is a rational basis for the legislature to draft section 5—8—4(c)(1) to exclude out-of-State sentences. We conclude that there is. By excluding out-of-State sentences, the legislature avoids serious difficulties in administering the sentencing act in the courts (see *People v. Dye*) and further avoids the possibility of arbitrary variations in sentences which might arise as a result of differences in sentencing schemes adopted by other States. We find that the challenged section is rationally designed to further a legitimate State purpose and is not violative of equal protection.

For the reasons stated, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

KARNS, P. J., and HARRISON, J., concur.