# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**People v. Eppinger**, 2013 IL 114121

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DOMINICK EPPINGER, Appellee. |
| Docket No. | 114121 |
| Filed | February 22, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial *in absentia* statute was not applicable and there was no plain error calling for a new trial where an accused who had been dissatisfied with his first two public defenders waived his right to counsel and elected to proceed *pro se*, but asked for new counsel when it was time for jury selection and, when this was refused, remained in his cell and did not participate in the *voir dire*. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. James E. Shadid, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Jerry Brady, State's Attorney, of Peoria (Michael A. Scodro, Solicitor General, and Michael M. Glick, Retha Stotts and Erica Seyburn, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel and Robert M. Hansen, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Fletcher P. Hamill, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Freeman.

## OPINION

¶ 1    Following a jury trial in the circuit court of Peoria County, defendant Dominick Eppinger was found guilty of attempted murder, aggravated battery with a firearm, two counts of armed robbery, and unlawful possession of a firearm by a felon, and was sentenced to 95 years' imprisonment. The appellate court reversed and remanded for a new trial. 2012 IL App (3d) 100577-U. The principal issue in this appeal is whether the trial court violated section 115-4.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4.1(a) (West 2010)) (sometimes referred to as the trial *in absentia* statute) when, following the refusal of defendant *pro se* to leave his holding cell and participate in his trial, the court conducted *voir dire* without first appointing counsel to represent defendant.

¶ 2    For the reasons discussed below, we hold that section 115-4.1(a) of the Code is inapplicable under the facts of this case, and thus the trial court did not violate the statute. Accordingly, we reverse the judgment of the appellate court.

¶ 3                              BACKGROUND

¶ 4    On December 9, 2008, the Peoria County grand jury entered a multicount indictment against defendant in connection with an armed robbery earlier that month during which one of the victims was shot multiple times, sustaining permanent injuries. Defendant entered a plea of not guilty, and the trial court appointed the public defender to represent him. Defense counsel filed a motion to suppress defendant's oral statements to police, including a videotaped statement in which defendant admitted his participation in the armed robbery and

shooting. The jury trial, originally set for March 9, 2009, was continued to June 8, 2009. After an evidentiary hearing, the trial court denied defense counsel's suppression motion. Defendant thereafter requested the appointment of a different public defender, who would keep him better informed and represent him "a little bit better." Defense counsel stated that communication with her client had "broken down." The trial court granted the request for appointment of new counsel and continued the trial date to August 24, 2009.

¶ 5 Defendant's new public defender filed a motion to suppress the identification of defendant during a photographic lineup. Before that motion could be heard, on August 18, 2009, six days before trial, defendant requested that he be allowed to proceed *pro se*. Defendant stated that he felt he could defend himself "better than the public defender can." After admonishing defendant about the difficulties of self-representation and the possible penalties he faced, the trial court granted defendant's request, finding defendant knowingly and voluntarily waived his right to counsel. On defendant's motion, the jury trial was continued to October 19, 2009.

¶ 6 On September 11, 2009, the case was up for review and tender of discovery to defendant. The court noted, on the record, that defendant was "creating quite a ruckus in the bullpen" and that the court could hear defendant pounding. The court later cautioned defendant that although he had a right to represent himself, if he disrupted the proceedings, he could be removed, and the trial would proceed without him.

¶ 7 Defendant elected not to proceed on the motion to suppress identification that his former public defender filed, and instead filed a series of *pro se* motions challenging the photographic lineup. Of necessity, the trial date was continued to January 11, 2010. Following an evidentiary hearing on December 10, 2009, the trial court denied defendant's motions. As to the January 11, 2010, trial, upon questioning by the trial court, defendant stated several times that he was ready for trial. Defendant further stated that he would not be calling any witnesses and a pretrial conference was unnecessary.

¶ 8 On December 12, 2009, defendant sent a letter to the trial judge requesting, *inter alia*, appointment of standby counsel. At a hearing five days later, defendant indicated his continued desire to represent himself at trial, and that he was requesting standby counsel to ensure he would follow the correct procedure and that none of his rights would be violated. The trial court denied defendant's request. Defendant again indicated he was ready for trial.

¶ 9 On December 26, 2009, defendant wrote a letter to the trial judge regarding a discovery matter which the court took up on January 5, 2010. At that time, the court also covered the particulars of how the trial would proceed, advising defendant that jury selection would begin the afternoon of January 11, 2010. Defendant agreed with the trial court that the jury would be told that counsel was available to defendant, and defendant chose to represent himself. Defendant also agreed to make a list of questions he would like the jurors to be asked.

¶ 10 Six days later, on the morning of trial, defendant changed course. Defendant advised the court that he no longer wished to represent himself and requested appointment of counsel. The State objected, arguing that defendant's request was simply a delay tactic. Defendant interjected: "I'm not representing myself. I don't care—I don't care what she [the assistant State's Attorney] say[s]. I'm not going to trial by myself. I won't do it." The trial court

agreed with the State that defendant's request for appointment of counsel was made for the purpose of delay and denied that request. The court addressed defendant:

"I don't think anything has changed. You made an intelligent and knowing waiver of your right to counsel. You've been through two public defenders. You refused to cooperate with them. You asked to represent yourself. You were allowed to do so after questioning. You insisted on representing yourself at every court appearance. We gave you an opportunity to say that you did not want to represent yourself. You insisted on going forward even as of last Wednesday when we were in court. The fact of the matter is I think today it's simply for the purpose of delay that you ask for an attorney. There is nothing in the record to indicate that you're going to cooperate with an attorney. You have a—you had a right to an attorney. Attorneys were appointed for you. You chose to give up that right. You made that decision after lengthy questioning by me, and at this point I still believe that this is just for the purpose of delay, and your request now for appointment of counsel will be denied."

The following colloquy then took place:

"THE DEFENDANT: I ain't going to trial.

THE COURT: Well, this trial is going to start at 1:15.

THE DEFENDANT: I ain't doing it.

THE COURT: How do you choose—are you going to choose not to participate?

THE DEFENDANT: I'm not participating, man.

THE COURT: You've previously been advised that trial could be held in your absence.

\* \* \*

THE DEFENDANT: I'm not going to trial, man.

THE COURT: I'm going to have you brought back out here at 1:15. We'll go through questioning again and—

THE DEFENDANT: I don't want to talk to you no more.

THE COURT: And you can choose to participate or choose not to.

THE DEFENDANT: I'm not participating.

THE COURT: You are not participating at this point?

THE DEFENDANT: I'm not participating.

THE COURT: All right. We'll revisit this at 1:15.

\* \* \*

THE COURT: \*\*\* For the record, Mr. Eppinger has chosen to leave the courtroom, even though he's in custody. He does not—he just walked to the holding cell."

When the court reconvened at 1:17 p.m., defendant was not present. The record reflects that prior to the start of jury selection, the following exchange occurred:

"THE COURT: \*\*\* We're ready to begin jury selection. The Court has handed

clothes that Mr. Eppinger's mother brought this morning to the guard, and it's the report of the guard from the Peoria County Sheriff's Department that Mr. Eppinger refused the clothes and has refused to come into the courtroom; is that correct?

THE DEPUTY: That is so correct.

THE COURT: All right. That is consistent with his statements earlier this morning and his refusal to visit with his mother when the Court made that available to her and to him at mid morning this morning. The Court during a break was going to clear the courtroom and allow Mr. Eppinger's mother, Miss Causey, to visit with him. He refused that visit as well.

So with that in mind then, Miss Hoos [assistant State's Attorney], ready to proceed?

MS. HOOS: Yes, Judge. I'm ready to proceed. Are we even going to bring him out before we start jury selection just to ask him?

THE COURT: Well, I don't want him to have to be forcibly brought out, so—

MS. HOOS: Okay.

THE COURT: I'll ask the guard if you will please go back in and—and tell him that he's to be brought—he's to come into court and—and answer if he wishes to participate, okay? If you'll just say that—just bring him in. I don't know—but I don't want you to use physical force to have to do so. If he refuses, just come back out here and report, all right?

THE DEPUTY: Yes, sir.

(Pause.)

THE DEPUTY: He refused to come out.

THE COURT: All right. Can you tell me what he said?

THE DEPUTY: He says, 'I'm not going back into that courtroom. That's bullshit.' "

¶ 11   The court then proceeded with jury selection, advising the venire that defendant made a choice to represent himself, and made a choice that day not to participate in the proceedings. The trial court instructed the venire that the principles of law regarding the State's burden of proof, the presumption of innocence, and defendant's decision whether to testify applied notwithstanding defendant's absence. After the newly selected jury was dismissed for the day, the court again took up the matter of defendant's participation in his trial:

"THE COURT: I'm going to sign an order that has Mr. Eppinger brought to court tomorrow morning. We'll make another attempt to see if he wants to be clothed in the clothing that his mother brought for him and participate.

It looks to me like—is there a further report from the Sheriff's Department?

THE DEPUTY: Yes. When I went back just before we started picking jurors, I let him know we were picking jurors and asked him again if he did want to come out to participate, and he refused, and he said he will refuse to come to court tomorrow.

THE COURT: All right. Well, I'm just going to make a record that he will be

brought to court, but I don't expect anybody to have to forcibly or physically remove him from a cell to be brought to court or forcibly or physically remove him from any holding cell at the courthouse to be brought into the courtroom."

¶ 12    The following morning, defendant was present in the courtroom, dressed for trial. The court advised defendant that the jury had been selected, and that the jury was told that defendant had chosen to represent himself and also had chosen not to participate. Defendant stated that he still felt he needed counsel, but was choosing to participate and was ready to proceed.

¶ 13    The State's evidence included testimony from four of the victims, each of whom identified defendant as the person who had robbed him or her at gunpoint before shooting one of the victims multiple times. The State also played for the jury a video recording of defendant's confession. Defendant called no witnesses and did not testify, but he made an opening statement, cross-examined the State's witnesses, and made a closing argument. The jury found defendant guilty of attempted murder, aggravated battery with a firearm (which merged with the attempted murder), two counts of armed robbery, and unlawful possession of a firearm by a felon.

¶ 14    The trial court granted defendant's request and appointed the public defender to represent defendant posttrial. Although the public defender filed a posttrial motion, defendant filed his own motion for a new trial, which he insisted on arguing. Defendant explained: "I didn't want nobody to argue. I want to argue myself. I just needed an attorney after my sentencing to put in for my appeal." After argument on both motions, the trial court denied relief. The trial court subsequently sentenced defendant, who had two prior felony convictions, to an aggregate term of 95 years' imprisonment.

¶ 15    On appeal, defendant raised a single issue. Defendant claimed that the trial court violated section 115-4.1(a) of the Code by conducting *voir dire* in his absence without the presence of any counsel representing him. Because defendant failed to raise this issue in the trial court, defendant sought review under the plain-error doctrine, arguing that the trial court's alleged error affected his substantial rights. The appellate court agreed with defendant and reversed and remanded for a new trial. 2012 IL App (3d) 100577-U, ¶ 27. The appellate court held that section 115-4.1(a) of the Code requires that counsel be appointed to represent a defendant before trial *in absentia* may proceed, and that section 115-4.1(a) applies even where a defendant has waived his right to counsel and chooses to remain in his holding cell rather than appear for trial. *Id.* ¶¶ 7, 20. The appellate court declined to follow *People v. Reisinger*, 106 Ill. App. 3d 148 (1982), which, under similar circumstances, held that section 115-4.1(a) did not apply to an in-custody defendant. *Id.* ¶¶ 19-20. The appellate court further held that the trial court's purported violation of the statute constituted structural error in that defendant was denied a fair trial by an impartial jury. *Id.* ¶ 25.

¶ 16    We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).


¶ 17                                    ANALYSIS

¶ 18    The plain-error doctrine permits a reviewing court to by-pass normal rules of forfeiture and consider "[p]lain errors or defects affecting substantial rights *** although they were not

brought to the attention of the trial court." Ill. S. Ct. R. 615(a). See also *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Plain-error review is appropriate under either of two circumstances: (1) when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error"; or (2) when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 19     Defendant here proceeded in the appellate court under the second prong of the plain-error doctrine. In order to obtain relief, defendant must demonstrate not only that a clear or obvious error occurred (*In re M.W.*, 232 Ill. 2d 408, 431 (2009)), but that the error was a structural error (*People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010)). If defendant fails to meet his burden of persuasion on each of these propositions, the procedural default will be honored. *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009). The first step in our analysis is to determine whether an error occurred. *Thompson*, 238 Ill. 2d at 613; *M.W.*, 232 Ill. 2d at 431.

¶ 20     Defendant's claim of error centers on the court's purported failure to appoint counsel to represent him at trial. As to this claim of error, we note that defendant did not argue in the appellate court, and does not argue here, that the trial court erred by denying his request for standby counsel some three weeks before trial, or by denying his request for appointment of a third public defender on the morning of trial. Nor does defendant argue that he was entitled to appointment of counsel as a matter of state or federal constitutional law. Indeed, defendant does not claim that his waiver of his constitutional right to counsel was invalid for any reason. Rather, defendant argues only that he was statutorily entitled to appointment of counsel, *i.e.*, once defendant decided not to participate in his trial by refusing to leave his holding cell, the court had no choice, pursuant to section 115-4.1(a) of the Code, but to appoint counsel before proceeding with the trial. Whether the trial court violated section 115-4.1(a) devolves into an issue of statutory construction.

¶ 21     Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature, bearing in mind that the best evidence of such intent is the statutory language, given its plain and ordinary meaning. *People v. Baskerville*, 2012 IL 111056, ¶ 18. In addition to the statutory language, legislative intent can be ascertained from consideration of the statute in its entirety, its nature and object, and the consequences of construing it one way or the other. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 45. Where the statutory language is clear and unambiguous, we will apply the statute as written. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. If, however, the statutory language admits of more than one reasonable construction and is thus ambiguous, we will consider extrinsic aids to construction. *Id.* Because statutory construction is an issue of law, our review proceeds *de novo*. *Baskerville*, 2012 IL 111056, ¶ 18.

¶ 22     Section 115-4.1(a) of the Code states in its entirety:

"Absence of defendant. (a) When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial

-7-

evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant. Absence of a defendant as specified in this Section shall not be a bar to indictment of a defendant, return of information against a defendant, or arraignment of a defendant for the charge for which bail has been granted. If a defendant fails to appear at arraignment, the court may enter a plea of 'not guilty' on his behalf. If a defendant absents himself before trial on a capital felony, trial may proceed as specified in this Section provided that the State certifies that it will not seek a death sentence following conviction. Trial in the defendant's absence shall be by jury unless the defendant had previously waived trial by jury. The absent defendant must be represented by retained or appointed counsel. The court, at the conclusion of all of the proceedings, may order the clerk of the circuit court to pay counsel such sum as the court deems reasonable, from any bond monies which were posted by the defendant with the clerk, after the clerk has first deducted all court costs. If trial had previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial. All procedural rights guaranteed by the United States Constitution, Constitution of the State of Illinois, statutes of the State of Illinois, and rules of court shall apply to the proceedings the same as if the defendant were present in court and had not either forfeited his bail bond or escaped from custody. The court may set the case for a trial which may be conducted under this Section despite the failure of the defendant to appear at the hearing at which the trial date is set. When such trial date is set the clerk shall send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial. Such notification shall be required when the defendant was not personally present in open court at the time when the case was set for trial." 725 ILCS 5/115-4.1(a) (West 2010).

¶ 23    In *People v. Ramirez*, 214 Ill. 2d 176, 183 (2005), we determined that section 115-4.1(a) is the second part of a larger statutory scheme, the first part of which is found in section 113-4(e) of the Code (725 ILCS 5/113-4(e) (West 2010)). Section 113-4(e) provides:

"If a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence." 725 ILCS 5/113-4(e) (West 2010).

Reading these provisions together, we concluded that section 115-4.1(a) directs how a court should proceed where a defendant, properly admonished pursuant to section 113-4(e), willfully absents himself from trial. *Ramirez*, 214 Ill. 2d at 183.

¶ 24    This court has had occasion to consider the meaning of certain discrete provisions of this statutory scheme. See, *e.g.*, *People v. Phillips*, 242 Ill. 2d 189, 199 (2011) (interpreting section 113-4(e)'s admonishment requirement in light of the warning, regarding trial *in absentia*, contained on the back of a bail bond slip); *Ramirez*, 214 Ill. 2d at 183 (interpreting section 115-4.1(a)'s requirement that the clerk notify an absent defendant of the trial date by certified mail); *People v. Garner*, 147 Ill. 2d 467, 475-76 (1992) (interpreting section 113-

4(e)'s admonishment with respect to experienced criminals); *People v. Partee*, 125 Ill. 2d 24, 41 (1988) (interpreting section 113-4(e)'s admonishment with respect to a defendant who absconds during trial); *People v. Maya*, 105 Ill. 2d 281, 287 (1985) (interpreting section 115-4.1(a)'s provision for payment of defense counsel fees from forfeited bail bond monies). But this court has not had occasion to address whether section 115-4.1(a) applies to an in-custody defendant who proceeds *pro se*, after waiving the right to counsel, and who refuses to participate in his own trial, thus also waiving his right to be present. Although the State and defendant both rely on what they claim is the plain language of the statute, they disagree as to which language is controlling. The parties' divergent views as to the proper reading of the statute, as well as the current disagreement between the appellate court order in this case and the appellate court's opinion in *Reisinger*, are indicative of a lack of clarity in the statutory scheme.

¶ 25        The State focuses on the statutory language which seemingly excludes in-custody defendants. The State notes that the admonishments in section 113-4(e) are expressly framed in terms of a defendant who either "escapes from custody or is released on bond and fails to appear" (725 ILCS 5/113-4(e) (West 2010)), and that section 115-4.1(a) contains similar language: "All procedural rights guaranteed by the United States Constitution, Constitution of the State of Illinois, statutes of the State of Illinois, and rules of court shall apply to the proceedings the same as if the defendant were present in court and *had not either forfeited his bail bond or escaped from custody*." (Emphasis added.) 725 ILCS 5/115-4.1(a) (West 2010). The State posits that this terminology "does not encompass in-custody defendants: a defendant in custody has no bond to 'forfeit,' has not 'escaped,' and is not 'absent'—he is in custody, whether in his courthouse holding cell or in the courtroom itself."

¶ 26        The State maintains that limiting the statute's applicability in this fashion is consistent with its purpose: guaranteeing the fairness of proceedings conducted in a defendant's absence where the defendant's waiver of his right to be present at trial must be inferred from his failure to appear. The State argues that no uncertainty exists and no such inference need be made where, as here, the defendant is in custody and has made a valid waiver of his right to be present and his right to counsel.

¶ 27        The State's construction of the statute finds support in our appellate court's opinion in *People v. Reisinger*, 106 Ill. App. 3d 148 (1982), which the appellate court here declined to follow. In *Reisinger*, the in-custody defendant, who was represented by private counsel and then successive public defenders, elected to proceed *pro se*. On the day of trial, unhappy with the court's decision to defer ruling on one of his *pro se* motions, the defendant refused to participate. After forcibly being brought back into the courtroom, the defendant voluntarily waived his right to be present and refused to have the public defender, who had been appointed as standby counsel, represent him. Trial proceeded in the absence of both defendant and standby counsel, and a jury found defendant guilty of theft.

¶ 28        On appeal, the defendant argued, *inter alia*, that section 115-4.1(a) contains an absolute prohibition against trials *in absentia* when the defendant is not represented by counsel. The appellate court disagreed, holding that the defendant's absence from trial did not fit within the circumstances contemplated by the statute. *Reisinger*, 106 Ill. App. 3d at 153. The appellate court discussed the defendant's right to counsel:

"The defendant had retained counsel[,] and two appointed public defenders represented him in the instant case before he elected to proceed *pro se*. He was obviously aware of his right to counsel and right to represent himself. He exhibited a fair amount of legal sophistication and used every opportunity to enforce his rights. When it became apparent to the defendant that his trial would commence, he demanded both his own absence and the dismissal of his standby counsel. The record establishes that the defendant deliberately and knowingly exploited his right to counsel *** and consciously sought delay. As the Illinois Supreme Court recently observed[,] the right of representation 'may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime.' (*People v. Myles* (1981), 86 Ill. 2d 260, 268, ***.)" *Id.*

¶ 29    *Reisinge*r is the only published opinion to consider the applicability of the appointment of counsel provision in section 115-4.1(a) to in-custody defendants and has gone unchallenged for the past three decades.[1] Although defendant concedes that "*Reisinger* stands for the proposition that the judge was not required to appoint counsel in this case," he argues that *Reisinger* is contrary to the plain language of the statute. According to defendant, the scope and applicability of section 115-4.1(a) is not controlled by the reference in that section, or in section 113-4(e), to defendants who have escaped from custody or forfeited their bail. Rather, defendant maintains that the controlling language is found in the initial sentence of section 115-4.1(a): "When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is *willfully avoiding trial*, the court may commence trial in the absence of the defendant." (Emphasis added.) 725 ILCS 5/115-4.1(a) (West 2010). Based on this language, defendant maintains that section 115-4.1(a) applies, without limitation, any time a defendant is "willfully avoiding trial" even where, as here, the defendant is in custody but refuses to leave his holding cell. Defendant further argues that the statute expressly requires that "[t]he absent defendant must be represented by retained or appointed counsel" (*id.*), and that the statute makes no exception for a defendant who has previously waived the right to counsel. Finally, defendant argues that policy considerations favor an interpretation of the statute requiring appointment of counsel in all trials *in absentia*, notwithstanding a previous waiver of counsel, because "a trial with no representation of one of its parties is the antithesis of our adversarial system."

¶ 30    Defendant's reading of the statute finds at least some support in appellate court opinions which, although not involving in-custody defendants, have spoken in absolute terms of the need for representation at trial of an absent defendant. In *People v. Gargani*, 371 Ill. App. 3d 729, 736 (2007), for example, the appellate court held that the statute's command that the absent defendant "must" be represented by counsel is a mandatory obligation. See also *People v. McCombs*, 372 Ill. App. 3d 967, 971-72 (2007) (holding that the appointment of

---

[1]The appellate court's decision in the present case, though parting company with *Reisinger*, was filed as an order, rather than an opinion, and is not precedential. See Ill. S. Ct. R. 23 (eff. July 1, 2011).

counsel provision in section 115-4.1(a) applies notwithstanding a prior waiver of counsel). Defendant's reading of the statute is also consistent with "our traditional distrust of trials *in absentia*." *Garner*, 147 Ill. 2d at 483.

¶ 31    Our job of ascertaining legislative intent is not an easy one where, as here, the statute is not a model of clarity, and the reading of the statute advocated by the State and defendant each has merit, *i.e.*, both readings find some support in the statutory language and case law. Taking into account the consequences of construing the statute one way or the other does not bring us any closer to discerning legislative intent. Although defendant's expansive construction has the benefit of a bright-line rule applicable to all defendants who are tried *in absentia*, it would permit an in-custody defendant to manipulate his right to counsel and benefit from his own delay tactics. Under defendant's reading, the trial court in the instant case would have been required to appoint a third public defender and continue the trial date while new counsel prepared for trial, with no assurance that defendant would cooperate with this public defender, and even though defendant claims no error from the court's denial of his request to appoint counsel on the morning of trial. The State's less expansive construction would produce a different anomaly: an in-custody defendant who waives counsel and then escapes would be entitled to appointment of counsel before trial *in absentia*, but an in-custody defendant who waives counsel and refuses to leave his holding cell would not be entitled to appointment of counsel. The State's construction, however, would prevent manipulation of the right to counsel; in-custody *pro se* defendants would not gain an advantage from their voluntary absence.

¶ 32    We conclude that both interpretations of section 115-4.1(a) are reasonable, albeit for different reasons, and that the statute is thus ambiguous. *Nowak*, 2011 IL 111838, ¶ 11. In such cases, we may look beyond the statutory language and consider extrinsic aids to construction in order to ascertain legislative intent. *Id.* One such extrinsic aid is legislative history. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 604 (2008).

¶ 33    This court has already considered the legislative history of section 113-4(e) of the Code, which contains the admonishment provision, and has recognized that its primary purpose "is to prevent 'bail jumping' and to promote the speedy satisfaction of judgment." *Garner*, 147 Ill. 2d at 481 (citing 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 151 (statements of Representative Kosinski), at 153 (statements of Representative McAuliffe)). As discussed below, section 115-4.1(a) shares the same purpose.

¶ 34    Section 115-4.1 was first added to the Code in 1971. Pub. Act 77-1446 (eff. Sept. 2, 1971). As originally adopted, the single-paragraph statute addressed only the situation where, after trial commences, a defendant "willfully absents himself from court for a period of 2 successive days." *Id.* The statute provided that the absence of such defendant "shall not operate as a bar to concluding the trial." *Id.*

¶ 35    In 1979, with the adoption of Public Act 81-1066, the legislature expanded section 115-4.1. Pub. Act 81-1066 (eff. Sept. 26, 1979). Although the legislature would twice more amend section 115-4.1 to bring it to its present form (see Pub. Act 84-945 (eff. Sept. 25, 1985); Pub. Act 90-787 (eff. Aug. 14, 1998)), the legislature's 1979 amendment added the language on which the parties here primarily rely. The 1979 amendment also added the

corresponding admonishment provision to section 113-4 of the Code. Pub. Act 81-1066 (eff. Sept. 26, 1979).

¶ 36    The legislative history of Public Act 81-1066, which began life as House Bill 295, reveals that the legislature's intent was to address the problem of bail jumpers. As explained by one of the bill's sponsors:

"House Bill 265 is the Bill that's aimed at bail jumpers. *** It's [*sic*] intention within Constitutional limitations is to get those people who deliberately jump bail to escape prosecution. It's Constitutional[ly] designed to give them every prerogative if they have cause for such bail jumping. But it's [*sic*] intention [is] to get at people such as the people we've experienced in our county who on posting twenty-five hundred dollars in cash on an aggravated rape and armed robbery, then deliberately jump bail and are not heard of because they feel with overwhelming evidence twenty-five hundred dollars is a cheap fee to pay for escaping a jail sentence. This was particularly evident in the 'Herrara' case, an alledged [*sic*] dope smuggler from Mexico in Chicago to whom they say one hundred thousand dollar[s] has no concern to permit him to jump bail and return to Mexico." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 151 (statements of Representative Kosinski).

Representative Kosinski elaborated:

"This [bill] merely says that if a man deliberately, I repeat, deliberately jumps bail to escape the state's prosecution, the trial can proceed without him. *** [I]t is the intention of the Sponsors of this Bill *** [t]o insure that for a few paltry dollars, a man does not escape justice." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 155-56 (statements of Representative Kosinski).

Another representative who spoke in support of the bill noted that when a defendant jumps bail, by the time he or she is apprehended, witnesses may be dead or may have moved, and that the bill would allow trial to proceed while witnesses are still available. 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 153 (statements of Representative McAuliffe). Representative Katz voiced similar concerns, focusing on a perceived unfairness in the then-existing statute:

"If the only right involved were the right of the defendant, it would be very easy simply to vote 'no'. The fact is that there is also the right of the victim to the crime. You have the situation where the defendant has an incentive to jump bail. When he jumps bail, then it is a matter of time until all the state's evidence has been lost[,] *** the witnesses have disappeared, the victim of the crime is no longer there and so *** the present law gives an incentive to the bail jumper, an incentive that works contrary to fairness to the victim of the crime." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 157 (statements of Representative Katz).

¶ 37    The legislative debates in the Senate similarly reflect that House Bill 265 was "designed to correct a problem *** with bail jumpers." 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 219 (statements of Senator Sangmeister). Senator Sangmeister explained:

"[A] person can be picked up on an offense, post even a huge bail, particularly in the drug cases, and at that time, skip out of bail. And at that time under the present law,

unless a trial has commenced, there is no way you can try that person. So if he comes back in, commits the same crime again, he's picked up again and arrested, but he can also make bond again because he has not been tried. This particular bill, if it becomes law, will enable the ... prosecution to go forward and ... and try this person and there are plenty of safeguards in the bill. For example, if he's requested a jury trial, he's going to get a jury trial. He has to be represented by council [*sic*]. All of his constitutional rights are absolutely preserved. But in the end, if there is a ... a determination of guilt, the next time that person comes back in the jurisdiction and is arrested, he can be picked up *** and confined rather than again making bail." *Id.* at 220.

¶ 38    The legislative history of Public Act 81-1066, when considered in tandem with the statutory language, demonstrates that the General Assembly intended to target the problems of disappearing witnesses and stale evidence where prosecution is suspended indefinitely because the defendant jumps bail before trial even commences. Nothing in the debates suggests that the legislature intended to address the entirely different problems that arise where a defendant, who is in custody, essentially boycotts his or her own trial. Although such conduct may delay the trial in the short run or disrupt the court's docket temporarily, it does not raise the specter that trial may be delayed indefinitely, which was the impetus for the legislature's adoption of Public Act 81-1066.

¶ 39    We note, moreover, that nothing in the legislative history suggests that the General Assembly intended the statute generally, or its appointment-of-counsel provision specifically, to be used by in-custody defendants as a sword to delay trial, or that the legislature intended to remove the trial judge's discretion when faced with an eleventh-hour request for appointment of counsel. Rather, the debates as a whole reveal that the General Assembly wanted to remove any benefit to a defendant who flouts the criminal justice system by jumping bail.

¶ 40    Based on the language in section 115-4.1(a), as well as the related admonishments in section 113-4(e), considered in light of the legislative history, we hold that section 115-4.1(a) is inapplicable to in-custody defendants. Accordingly, the trial court here was not statutorily required to appoint a third public defender and continue the trial date simply because defendant, after waiving his right to counsel, decided to waive also his right to be present by refusing to leave his holding cell.

¶ 41    We reject defendant's argument that if section 115-4.1(a) does not apply in this case, then the court could not have proceeded with *voir dire* in defendant's absence because no other statute authorizes trial *in absentia*. The fact that the statute regulates trial *in absentia* in certain cases does not mean that trial *in absentia* is prohibited in all other cases. The right of a defendant to be present at all stages of his trial exists as a constitutional right independent of section 115-4.1(a) of the Code (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8), and, therefore, a defendant may waive that right—as defendant did here—independent of the statute. In other words, express statutory authority is not a prerequisite to trial *in absentia*. A trial, of course, must proceed within the confines of our federal and state constitutions. Defendant, however, makes no constitutionally based argument that would require appointment of counsel in the face of a valid waiver of that right. Instead, defendant's claim

-13-

of error is based entirely on section 115-4.1(a) of the Code, which we have held is inapplicable under the facts of this case.

¶ 42    Because defendant's only claim of error fails, defendant cannot succeed on his claim of plain error. Accordingly, defendant is not entitled to a new trial.

¶ 43                                    CONCLUSION

¶ 44    For the reasons stated, we reverse the judgment of the appellate court that reversed defendant's convictions and remanded for a new trial, and affirm the judgment of the trial court.

¶ 45    Appellate court judgment reversed.

¶ 46    Circuit court judgment affirmed.

¶ 47    JUSTICE BURKE, dissenting:

¶ 48    Section 115-4.1(a) of the Code of Criminal Procedure (Code) (725 ILCS 5/115-4.1(a) (West 2010)) provides that an attorney must be appointed to represent a defendant who is tried *in absentia*. The majority today holds that this requirement does not apply to a *pro se* defendant who refuses to leave his holding cell and participate in his trial. I disagree with this conclusion and therefore dissent.

¶ 49    The majority initially finds that the language of section 115-4.1(a) is ambiguous. According to the majority, the statute does not clearly state whether it applies only to those defendants who have escaped from custody or have been released on bond and fail to appear for trial, or whether it may also apply to an in-custody defendant. *Supra* ¶ 32. Relying on legislators' statements during the floor debates indicating that the statute was intended to address the problem of defendants who jump bail, the majority concludes that section 115-4.1(a) is inapplicable to defendants who remain in custody. *Supra* ¶¶ 36-40.

¶ 50    While I agree with the majority that the statute is ambiguous, I disagree that the legislative history resolves the ambiguity. Throughout the legislative debates, the legislators repeatedly refer to the problem of bail jumping and indicate that the statute was intended to provide a mechanism, within constitutional limits, to try a defendant who jumps bail in his or her absence. Nowhere in the debates do the legislators say, however, that the legislation was intended to apply *exclusively* to bail jumpers. Still unresolved then is the issue raised by defendant in this appeal—whether the statute applies to an in-custody defendant who refuses to leave his holding cell. That issue was never raised during the legislative debates. "Not every silence is pregnant." *State of Illinois, Department of Public Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir. 1983). We cannot infer from the legislators' mere silence in this instance that the statute was not intended to apply to an in-custody defendant.

¶ 51    Because the legislative history does not resolve the question at hand, principles of statutory interpretation may be employed to decide the issue. When interpreting an ambiguous statute, we may consider the consequences which would result from construing the statute one way or the other. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433,

441 (2010). In doing so, we presume that the legislature, in enacting the statute, did not intend absurd, inconvenient, or unjust results. *In re Detention of Powell*, 217 Ill. 2d 123, 135 (2005).

¶ 52      Section 115-4.1(a) provides that, "[w]hen a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant." 725 ILCS 5/115-4.1(a) (West 2010). The statute requires that trial in the absence of the defendant "shall be by jury unless the defendant had previously waived trial by jury," and that "[t]he absent defendant must be represented by retained or appointed counsel." *Id.* It also provides that "[a]ll procedural rights guaranteed by the United States Constitution, Constitution of the State of Illinois, statutes of the State of Illinois, and rules of court shall apply to the proceedings the same as if the defendant were present in court and had not either forfeited his bail bond or escaped from custody." *Id.*

¶ 53      This court has held that the legislature's intention in enacting section 115-4.1(a) was "to provide for a trial *in absentia*, within constitutional limits, if a defendant wilfully and without justification absented himself from trial" (*People v. Maya*, 105 Ill. 2d 281, 285 (1985)), and to "set[ ] forth the circumstances in which a trial *in absentia* may be conducted" (*People v. Smith*, 188 Ill. 2d 335, 341 (1999)). We also have said that "[s]ection 115-4.1 provides for trial *in absentia*. It does not create a kangaroo court. *** [T]he defendant who is absent from trial, even willfully, retains some of the procedural rights of a present defendant." *People v. Partee*, 125 Ill. 2d 24, 31 (1988). Thus, the legislature specifically included necessary safeguards in the statute in order to protect the absent defendant's important constitutional and statutory rights. See *People v. Ramirez*, 214 Ill. 2d 176, 184 (2005).

¶ 54      In addition, our appellate court has held that the appointment-of-counsel provision in section 115-4.1(a) is a mandatory prerequisite to conducting a trial in defendant's absence and that the failure to appoint counsel for a defendant before trying him *in absentia* is reversible error. *People v. Gargani*, 371 Ill. App. 3d 729, 736 (2007). Further, our appellate court has held that even where a defendant had previously waived his right to an attorney, the statute entitles the defendant to the appointment of counsel before being tried *in absentia*. *People v. McCombs*, 372 Ill. App. 3d 967, 972 (2007).

¶ 55      Given this background, the majority's reading of the statute is unreasonable. Under the majority's interpretation of section 115-4.1(a), a defendant who has invoked his right of self-representation prior to being released on bond and who fails to appear on his trial date would be entitled to appointment of counsel before a trial could be held in his absence, while an in-custody defendant who invokes his right of self-representation and refuses to leave his cell would not be entitled to appointment of counsel. In other words, the majority has concluded that the legislature intended to afford *greater* protections to those defendants who jump bail than those who remain in-custody. This cannot possibly be correct.

¶ 56      Moreover, this court has held that a trial at which neither the defendant nor defense counsel is present is unconstitutional. *People v. Davis*, 39 Ill. 2d 325, 331 (1968) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)); *Partee*, 125 Ill. 2d at 39; *People v. Barraza*,

193 Ill. App. 3d 655, 660 (1990) ("The role of the defendant's attorney in the *in absentia* proceedings is crucial to insure that they are conducted with due regard for the defendant's rights. In fact, the presence of counsel for the defendant is essential to make such proceedings constitutional." (citing *Davis*, 39 Ill. 2d at 329-31)). Presumably, the legislature was aware of the constitutional restrictions on trials *in absentia* in the absence of defense counsel when it enacted section 115-4.1(a). Thus, it is reasonable to assume that the legislature intended the statute to apply to *any* defendant who is absent from trial, including one who refuses to leave the holding cell.

¶ 57    The majority expresses concern that an in-custody defendant might use the appointment-of-counsel provision in section 115-4.1(a) to obstruct the proceedings and cause delay. However, by refusing to enter the courtroom and participate in his trial defendant waived his right to represent himself. See, *e.g.*, *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (a trial judge may terminate self-representation if a defendant "deliberately engages in serious and obstructionist misconduct" and may appoint standby counsel, even over defendant's objection, to be available to represent the defendant in the event that termination of the defendant's self-representation is necessary). There is no reason, therefore, why the judge could not have appointed counsel to represent defendant and continued on with the proceedings. See also, *e.g.*, *Mayberry v. Pennsylvania*, 400 U.S. 455, 468 (1971) (Burger, C.J., concurring) ("A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself.").

¶ 58    To be sure, appointing counsel might have occasioned further delay. But consider the consequence of holding that the legislature did not intend for the statute to apply to in-custody defendants because there might be some delay. Such a holding would mean that the legislature intended for a criminal trial to go forward with no defense counsel present, no defendant present, and the jurors placed in front of a completely one-sided, "kangaroo court." *Partee*, 125 Ill. 2d at 31. Again, in my view, there is no possibility that this is what the General Assembly intended.

¶ 59    The legislature, in enacting section 115-4.1(a), intended to safeguard the constitutional rights of a defendant who is tried *in absentia*, thus ensuring the fairness of the trial proceedings. The statute explicitly provides that the defendant *must* be represented by retained or appointed counsel. Construing the statute to exclude in-custody defendants leads to absurd results: that the legislature intended to afford greater protections to those defendants who jump bail than those who remain in custody, and that the legislature intended for criminal trials to be conducted in "kangaroo courts." I cannot reasonably conclude that the legislature intended those results. Accordingly, I would hold that the legislature intended for the constitutional protections in section 115-4.1(a) to apply any time a defendant is tried *in absentia*, including those instances when the defendant is in custody.

¶ 60    JUSTICE FREEMAN joins in this dissent.