**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220271-U

Order filed October 16, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Bureau County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0271 Circuit No. 21-CF-31 |
| | ) | |
| EDDIE D. SARDON, | ) ) | Honorable James A. Andreoni, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: (1) The State's arguments that certain material facts were uncontradicted did not shift the burden of proof to defendant. (2) The trial court did not err in imposing an extended-term sentence on defendant's aggravated domestic battery conviction. (3) The trial court did not err in ordering defendant's sentence to run consecutive to his sentence in another case.

¶ 2      Defendant, Eddie D. Sardon, appeals his conviction for aggravated battery and his sentence for aggravated domestic battery. Defendant argues (1) the State improperly shifted the burden of proof to defendant when it argued that numerous material facts relating to the aggravated battery

charge were uncontradicted, (2) the trial court erred when it imposed an extended-term sentence on his Class 4 felony conviction where he was also convicted of a Class 2 felony, and (3) the court erred in ordering his sentences to run consecutive to a misdemeanor sentence in another case. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)), two counts of obstructing or resisting a peace officer (*id.* § 31-1(a)), domestic battery, (*id.* § 12-3.2(a)(1)), aggravated domestic battery (*id.* § 12-3.3), and unlawful possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2020)). All six charges stemmed from an incident on June 11, 2021. Prior to trial, the State dismissed the domestic battery charge. The remaining five charges proceeded to a bench trial on November 1, 2021.

¶ 5        Wanda Madrigal testified that on June 11, 2021, she and defendant were in a dating relationship. They had been living together for approximately three years at that point. On that day, Madrigal was getting ready, and defendant and his friend, Billy Raye Tillotson, were passed out on the kitchen floor. Madrigal shook defendant with her foot to wake him. When defendant awoke, he became angry. Defendant stood up and began pushing Madrigal, demanding to know why she kicked him. After being pushed several times, Madrigal pushed defendant in return, and he fell into the wall. Defendant became enraged and "came after [her], and he started choking [her]." Defendant had both hands around Madrigal's throat as he choked her. Madrigal informed defendant that she could not breathe. Defendant continued to choke Madrigal until she passed out. After a time, she regained consciousness, "gasping for air." She could hear defendant in the bedroom. As defendant exited the bedroom, Madrigal said, "You choked me out." Defendant replied, "You're lucky that's all I did to you, bitch." Madrigal called the police. Officers arrived

with an ambulance shortly thereafter. Photographs of Madrigal's injuries were entered into evidence.

¶ 6         Officer Matt Stank testified that on June 11, 2021, he and Officer Thomas Rogel responded to Madrigal's residence to investigate the report of a domestic battery. Defendant answered the door and informed the officers Madrigal was not in the residence. Defendant would not let officers enter the residence. Stank had dispatch call Madrigal, who informed dispatch that she was locked in the bathroom and requested help. Stank told defendant he was entering the residence to assist Madrigal. Defendant refused to allow the officers to enter. Defendant attempted to close the door on the officers. Stank stopped the door with his foot and placed defendant under arrest for obstructing a peace officer. Defendant struggled with Stank as Stank attempted to handcuff him. Rogel assisted Stank, and defendant was handcuffed. Stank entered the residence to find Madrigal, leaving defendant outside with Rogel.

¶ 7         Stank aided Madrigal and photographed her injuries. While Stank spoke with Madrigal, Rogel yelled for Stank to come outside. Stank exited the residence and observed defendant on the ground, attempting to "work his handcuffs from behind him to the front of him." Stank told defendant to stop and placed his arms behind his back again. Stank observed no injuries or marks on defendant. Stank resumed his investigation inside the residence.

¶ 8         Stank spoke with Tillotson. Tillotson told Stank that he did not see anything regarding the domestic battery. Tillotson then told Stank that he had heard an argument. Stank described Tillotson as tired and apathetic, with noncommittal responses that changed several times. As he was speaking with Tillotson, Stank heard shouting from outside the residence again.

¶ 9         Stank exited the residence and observed defendant on the ground again. Rogel held defendant down, attempting to keep control of him. Stank helped defendant to his feet. Stank

3

informed defendant that he was under arrest for domestic battery, and he needed to quit fighting with officers. Defendant responded that he was not fighting with Stank, he was fighting with Rogel. At that time, Stank observed Rogel bent over. Stank stated that when Rogel got up off the ground, he remained bent at the waist, breathing heavily.

¶ 10     Rogel testified consistently with Stank regarding the events leading up to defendant being handcuffed. After Stank entered the residence to speak with Madrigal and Tillotson, Rogel waited outside with defendant who was handcuffed behind his back and seated on a step. Defendant continually tried to stand up and "get his hands out from under his feet, to bring his hands up front again." Defendant ignored Rogel's commands to stop. Rogel requested Stank's assistance, and they secured defendant in a seated position. Once Stank reentered the residence, defendant resumed his attempts to switch the position of his hands and stand. Rogel held defendant's shoulder, trying to keep him seated. Defendant pushed and kicked at Rogel and was eventually able to stand. Rogel tried to hold defendant while defendant "knee[d] and kick[ed]" at him. Defendant turned himself so he was "quarter-facing" Rogel. At that point, defendant kneed Rogel in the groin. Rogel testified the strike left him breathless. Rogel took defendant to the ground to gain control of him. Stank arrived to assist, and defendant was placed in the squad car.

¶ 11     The State presented evidence that officers found a baggie containing a powdery substance in defendant's pocket. The substance was laboratory tested and determined to be 1.2 grams of a substance containing methamphetamine. At the close of the State's evidence, defendant moved for a directed finding, which the court denied.

¶ 12     Jennifer Vietti, defendant's friend, testified that on June 11, 2021, she walked to defendant's residence to see if he could give her a ride. As she approached, she observed two squad cars and officers in front of the residence, so she stopped a distance away from the scene. Vietti

4

saw "that [defendant] was tackled to the ground and stuff and the cops were, you know, getting on him pretty bad." Vietti did not observe defendant resisting arrest. Defendant was in handcuffs, and the officers picked him up off the ground and placed him in the squad car. She never saw defendant "hit or physically do anything to any of [the] officers[.]"

¶ 13     On cross-examination, Vietti testified she approached defendant's residence from the east. She observed squad cars but did not see an ambulance on the scene. Vietti watched the events for approximately 20 to 30 minutes until defendant was placed in the squad car. Vietti testified that defendant called her from the county jail on September 16, 2021. Their conversation involved defendant explaining "what was—*** with [Madrigal]" and Vietti talking about "how [she] was coming up to his house to see about catching a ride home ***. That day when he had got in trouble with this incident." During the call, defendant told Vietti to say that she was across the street from the residence and observed defendant's arrest. Defendant instructed Vietti to have her statement about the events notarized and provide it to an individual named Mike so they could "match up with the others." Vietti reiterated that she did not see defendant assault police officers on June 11, 2021, and insisted that she did not "[get] the story from Mike."

¶ 14     In rebuttal, the State presented video footage from Rogel's dashcam, which recorded the area Vietti testified she had been. Vietti never appeared in the footage. The State also admitted an audio recording of defendant's September 16, 2021, phone conversation with Vietti. The first three minutes were played for the court. During the call, defendant informed Vietti that he received her phone number from Mike. Vietti responded that she spoke with Mike the day before, and he had told her to write a letter on defendant's behalf. Defendant explained to her to say, "Like you was across the street. Cuz you been to my crib before, right? *** Like you know was maybe across the street at the ATM or something and just happened to see." Vietti agreed and stated, "yeah, oh yeah,

5

I told him I got you." Defendant stressed that the most important thing for her to remember was that "[she] saw them trying to get [him] handcuffed. That's a key part in that." Vietti agreed to write the letter and have Mike review it prior to having it notarized.

¶ 15    During closing arguments, regarding the aggravated battery charge, the State argued "Officer Rogel clearly and uncontradicted testified the defendant intentionally and knowingly was kicking his legs and knees at Officer Rogel; and while doing this, he kneed Officer Rogel in the groin. This is uncontradicted." The State also asserted "the officers and the testimony were truthful, consistent and there's nothing to the contrary."

¶ 16    The court found defendant guilty on all five charges. In its finding on aggravated battery, the court highlighted that the evidence demonstrated defendant kneed Rogel in the groin. The court noted that the only contradictory evidence was provided by Vietti's testimony, which it found to be "highly suspect" based on the rebuttal evidence provided by the State.

¶ 17    At sentencing, the evidence demonstrated defendant had prior Class 3 felony convictions in 2012, 2015, and 2021, exposing defendant to extended-term sentencing on the Class 4 felony aggravated domestic battery conviction and the Class 3 felony unlawful possession of methamphetamine conviction. The court sentenced defendant to five years' imprisonment for aggravated battery, five years' imprisonment for aggravated domestic battery, and four years' imprisonment for unlawful possession of methamphetamine. Defendant was sentenced to 364 days in jail on the remaining two convictions. The court ordered these sentences to run concurrently with one another. Further, the court ordered these sentences to run consecutively with defendant's sentence in another case.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, defendant argues the State improperly shifted the burden of proof regarding his aggravated battery conviction, where it argued certain material evidence was uncontradicted. He contends the State's argument strongly implied defendant was required to present evidence to contradict the evidence presented by the State. Further, defendant argues the extended-term sentence imposed on his aggravated domestic battery conviction was improper where he was also convicted of a more serious felony stemming from a continuous and intrinsically related course of conduct. Finally, defendant argues that the sentences in this case cannot be ordered to run consecutive to the sentence imposed in another case. Defendant acknowledges that he forfeited the first two issues but argues they are reversible plain errors.

¶ 21    The plain error doctrine permits a reviewing court to remedy a "clear or obvious error" when (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step of the plain error analysis is to determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 22                          A. Improper Burden Shifting

¶ 23    First, defendant contends that the State improperly shifted the burden of proof to him where it suggested during closing arguments that defendant was obligated to present evidence to contradict the State's evidence. Criminal defendants have a constitutional right not to testify. *People v. Madej*, 177 Ill. 2d. 116, 145-46 (1997). Accordingly, the State must not comment, either directly or indirectly, on a defendant's failure to do so. *People v. Kliner*, 185 Ill. 2d 81, 156 (1998). Provided the State does not comment on *the defendant's* failure to testify, it "may comment that

7

evidence is uncontradicted and may do so even if the defendant was the only person who could have provided contrary proof." *People v. Keene*, 169 Ill. 2d 1, 21 (1995). Specifically, "the State is free to point out what evidence was uncontradicted so long as it expresses no thought about who specifically—meaning the defendant—could have done the contradicting." *Id.*

¶ 24        Here, the State argued that "Officer Rogel clearly and uncontradicted testified the defendant intentionally and knowingly was kicking his legs and knees at Officer Rogel; and while doing this, he kneed Officer Rogel in the groin. This is uncontradicted." Nothing in this language constitutes either an explicit or implicit comment on defendant's failure to present evidence. The State was simply highlighting the strength of its case, which it is permitted to do. See *People v. Cloutier*, 156 Ill. 2d 483, 507 (1993) (the State is "allowed to comment on the evidence and the strength of its case and to urge the fearless administration of justice and the detrimental effect of crime"). Likewise, the State's remark that "the officers and the testimony were truthful, consistent and there's nothing to the contrary" addressed what evidence was uncontradicted and "did not stray into the 'who' of the issue." *Keene*, 169 Ill. 2d at 23. Therefore, no error occurred.

¶ 25                              B. Improper Extended-Term Sentencing

¶ 26        Next, defendant asserts the court improperly imposed an extended-term sentence on defendant's Class 4 felony aggravated domestic battery conviction where he was convicted of the more serious Class 2 felony of aggravated battery. Generally, when a defendant has been convicted of multiple offenses, an extended-term sentence may be imposed only on the conviction with the highest-class designation. 730 ILCS 5/5-8-2(a) (West 2020). "However, where lesser and greater class offenses are not committed as part of a single course of conduct, an extended term may be imposed on a lesser offense." *People v. Hummel*, 352 Ill. App. 3d 269, 271 (2004). In determining whether convictions arise from a single course of conduct, courts will consider "whether there was

8

a substantial change in the nature of the defendant's criminal objective." *People v. Bell*, 196 Ill. 2d 343, 354 (2001). To decide this, courts must determine whether defendant's actions were independently motivated or whether these acts were each guided by an all-encompassing criminal objective. *Hummel*, 352 Ill. App. 3d at 271.

¶ 27        Defendant argues that his conduct on June 11, 2021, was continuous and intrinsically related, where he attacked Madrigal and immediately thereafter attacked Rogel, committing the same offense of battery against the two separate individuals. We disagree.

¶ 28        The record demonstrates that defendant awoke angry at Madrigal for kicking him. He strangled her until she passed out. After she regained consciousness, defendant was in the bedroom. He did not resume battering her after she told him that he had "choked [her] out," and merely quipped, "You're lucky that's all I did to you, bitch." Madrigal called the police, who arrived a short time later.

¶ 29        Once the police arrived, defendant calmly indicated that Madrigal was not there. When the police were not deterred, defendant denied them entrance and attempted to close the door. Defendant began struggling and resisted officers' attempts to handcuff him. Once handcuffed, defendant continuously attempted to frustrate his arrest. Defendant repeatedly attempted to stand and change the position in which his hands were restrained. Defendant's conduct was not aggression flowing into aggression. Defendant's objective when battering Madrigal was anger and retribution for a perceived injury. When dealing with officers leading up to and including his battery of Rogel, defendant's objective was to escape arrest. Accordingly, we find there was a substantial change in criminal objective, and the battery of Madrigal does not constitute the same course of conduct as the battery of Rogel. Thus, we find the court did not err in sentencing defendant to an extended term on his Class 4 felony aggravated domestic battery conviction.

¶ 30                                 C. Consecutive Sentencing

¶ 31          Finally, defendant argues that his consecutive sentences were unauthorized. On April 26, 2023, this court modified defendant's sentence in his other case, No. 21-CF-11, by reducing it to the maximum Class A misdemeanor sentence of 364 days in jail. *People v. Sardon*, 2023 IL App (3d) 220177-U, ¶ 3. Subsequently, defendant filed a supplemental brief in this case arguing that, where his felony sentence had been reduced to a Class A misdemeanor, consecutive sentencing was no longer authorized. In the other case, the State filed a petition for rehearing which we ultimately allowed, withdrawing our original decision, and affirming the judgment of the circuit court. *Id.* ¶¶ 3-4.[1]

¶ 32          Having considered the arguments put forth by both parties on this issue, we find that we are bound to follow our decision in *Sardon*, 2023 IL App (3d) 220177-U. Notably, that case was decided not by another panel of this court but by this same panel. We believe now as we did when we entered our June 12, 2023, order, that the record in case No. 21-CF-11 controlled the issue and compelled us to affirm the judgment in that case. *Sardon*, 2023 IL App 3d 220177-U, ¶¶ 4-5. Thus, the Class 3 felony sentence imposed in case No. 21-CF-11 is proper and the trial court in this case did not err by ordering consecutive sentencing.

¶ 33                                 III. CONCLUSION

¶ 34          For the foregoing reasons, we affirm the judgment of the Bureau County circuit court.

¶ 35          Affirmed.

---

[1]After this, supplemental briefing was completed, and the State moved to strike the first argument of defendant's supplemental reply brief, which we have taken with the case. We find defendant's arguments in the first issue of his reply brief could not have been raised previously and are aimed at persuading us to disagree with another panel of this court, which is not improper. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). Accordingly, we deny the State's motion to strike.