**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240533-U

Order filed October 17, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Bureau County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0533 Circuit No. 21-CF-31 |
| EDDIE D. SARDON, | ) ) ) | Honorable James A. Andreoni, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The circuit court did not err in summarily dismissing the defendant's *pro se* postconviction petition.

¶ 2    The defendant, Eddie D. Sardon, appeals from the first-stage dismissal of his *pro se* postconviction petition. He argues that the Bureau County circuit court erred when it summarily dismissed his petition where it stated the gist of a constitutional claim that the State had failed to disclose a report containing a sergeant's observations of an intake video from the defendant's arrest in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

¶ 3                                    I. BACKGROUND

¶ 4            Relevant to this appeal, the State charged the defendant with six offenses stemming from an incident on June 11, 2021, including unlawful possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2020)). On September 21, 2021, defense counsel asked the State whether it had knowledge of the existence of any intake video recording of the defendant. The State indicated that it did not but agreed to inquire about the existence of any video. The court admonished the defendant that, depending on the jail's camera system, the video may have already been overwritten. The court entered an order requiring the State preserve, obtain, and tender any intake video from the defendant's arrest that was still available. On October 25, 2021, the State informed defense counsel that there was no such video. The case proceeded to a bench trial on November 1, 2021.

¶ 5            Evidence at trial established that officers were dispatched to the defendant's residence on June 11, 2021, for a reported domestic battery. After struggling with the officers, the defendant was placed under arrest and transported to the Bureau County jail. Following a recess, the defendant informed the court that the State lied about the existence of the intake video. The defendant had spoken with Chief Deputy Bret Taylor of the Bureau County jail and was informed that the intake video was in his possession. The court ordered Taylor to appear to testify regarding the matter.

¶ 6            Taylor testified that, during the recess, the defendant asked him if the intake video from his June 11, 2021, arrest "had been thrown away." Taylor replied that it had not been thrown away. Taylor testified that he should have been clearer with the defendant and clarified that the video did not exist because it had been overwritten in the computer system. Taylor indicated that videos are overwritten after approximately 30 days and any video from the defendant's June arrest would no

longer have existed on September 21, 2021, when the order to preserve any such video was entered. When asked by defense counsel whether the video would have been relevant, Taylor answered that it would depend on where the defendant was located within the booking room. He explained that the camera does not cover the entire room and portions of the room are outside the camera's view.

¶ 7    The bench trial resumed. Bureau County Sheriff's Deputy Marty Kinsley testified that on June 11, 2021, he was working at the jail. As part of his duties, he oversaw the intake of new inmates. Every new inmate was patted down and searched for drugs or weapons. Kinsley performed the pat down of the defendant when he was brought to the jail on June 11, 2021. Kinsley checked the defendant's chest area and waistband. He checked the defendant's pockets and found nothing. Kinsley noticed a small coin pocket on the defendant's jeans. Kinsley placed his finger inside and could feel something but was unable to remove the item. Kinsley asked the defendant what was inside the coin pocket, but he refused to answer. Kinsley testified that Deputy Teresa Keist was present while he was patting down the defendant. Kinsley indicated that he pointed to the pocket and to Keist because he wanted her to search that pocket. Kinsley took the defendant to the shower area. Once the defendant had removed his jeans, Kinsley handed them to Keist.

¶ 8    Keist testified that routinely an inmate's items and clothing are taken while a strip search is completed. Keist then searched through everything to double-check. Kinsley "kind of signaled to [her] *** that he had felt something in [the defendant's jeans]." Keist indicated that Kinsley had placed the defendant's jeans on the booking room table for her to retrieve. She went through all the pockets. She found a small baggie containing a powdery substance "in the little change pocket on the right side *** of the jeans," which she wrapped in her rubber glove and brought to the master control room.

¶ 9        Deputy Daniel Smith testified that he was employed as a corrections officer at the Bureau County jail. On June 11, 2021, he was in the master control room. From his location, he could see the pat down of the defendant in the intake room. He observed Kinsley hand the defendant's jeans to Keist. He did not observe Keist search the jeans because she was outside of his view. Keist entered the master control room with the substance that she had located wrapped in her rubber glove. Smith gave the glove, containing the substance, to the Spring Valley Police Department. Witnesses from the crime laboratory testified that the substance was tested and determined to be 1.2 grams of a substance containing methamphetamine.

¶ 10       On November 8, 2021, the court found the defendant guilty on all counts. The defendant was sentenced to four years' imprisonment for unlawful possession of methamphetamine to run concurrent to the sentences imposed on the other offenses. We affirmed the defendant's convictions and sentences on direct appeal. *People v. Sardon*, 2023 IL App (3d) 220271-U, ¶ 34.

¶ 11       On June 10, 2024, the defendant filed a *pro se* postconviction petition asserting, *inter alia*, that the State improperly withheld exculpatory evidence in violation of *Brady*, where it failed to preserve and tender the intake video of his June 11, 2021, arrest and failed to disclose a report which detailed statements from Sergeant Ethan Wright regarding his review of the missing intake video. A page from a November 12, 2021, incident report was attached as an exhibit to the defendant's petition. The document shows that Keist, Wright, and other officers were interviewed regarding the defendant's claims "that the drugs were planted on him." Wright disclosed to investigators that he was not working the night that the defendant was arrested. Several days after the defendant's arrest, Wright reviewed the video footage of his intake. He stated that "he did not see anything had been found during the initial search of [the defendant] however when the pants were being searched on the booking table, this is off camera." Because Wright could not see the

4

search of the defendant's jeans and nothing relevant was depicted on the video footage, he did not flag the video for retention.

¶ 12    On August 20, 2024, the court dismissed the petition as frivolous and patently without merit. Regarding the claim on appeal, the court found that the defendant did not explain when he received the November 12, 2021, report, the attached report was incomplete and not supported by an affidavit, and the issue was forfeited for failure to raise it during posttrial proceedings or on direct appeal. Further, the court indicated that the evidence within the report only demonstrated that the search of the jeans occurred outside the camera's range of view and did not reduce the testimony of Keist and Kinsley to "utter fabrication" as the defendant claimed. The defendant appealed.

¶ 13                                                  II. ANALYSIS

¶ 14    On appeal, the defendant argues that the circuit court erred in dismissing his *pro se* postconviction petition at the first stage where he stated the gist of a constitutional claim that the State had committed a *Brady* violation, withholding material impeachment evidence from the defense. The Post-Conviction Hearing Act (Act) creates a procedure for imprisoned criminal defendants to collaterally attack their convictions or sentences based on a substantial denial of their constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2024). The Act provides for a three-stage proceeding. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006).

¶ 15    "At the first stage, the court must accept as true and liberally construe all of the allegations in the petition unless contradicted by the record." *People v. Walker*, 2019 IL App (3d) 170374, ¶ 13. At the first stage, a defendant must only state the gist of a constitutional claim, which is a low threshold. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). "If the trial court finds in the first stage of proceedings that the petition is frivolous or patently without merit, it shall summarily

5

dismiss the petition \*\*\*." *People v. Moore*, 2018 IL App (3d) 160271, ¶ 15. A petition is considered frivolous if it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009). Where the court dismisses the petition at the first stage, our review is *de novo*. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 16        In *Brady*, the United States Supreme Court held that the State was required to disclose evidence that is favorable to a defendant and material to either their guilt or punishment. *Brady*, 373 U.S. at 87. To survive summary dismissal when alleging a violation of *Brady*, a defendant must show it is arguable that "(1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either willfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment." (Internal quotation marks omitted.) *People v. Montanez*, 2023 IL 128740, ¶ 82.

¶ 17        The defendant cannot show that it was arguable that the undisclosed report was material to his guilt. "Evidence is material where a reasonable probability exists that disclosure of the evidence would have resulted in a different outcome." *People v. Roman*, 2016 IL App (1st) 141740, ¶ 18. Materiality does not require showing that disclosure would have resulted in acquittal and is not a sufficiency of the evidence test. *People v. Coleman*, 183 Ill. 2d 366, 393 (1998). To establish materiality, a defendant must only show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

¶ 18        Here, the undisclosed report largely corroborates the testimony provided at trial. Wright reviewed the video footage of the defendant's intake and did not observe anything found on the initial search of the defendant. However, Wright noted that the defendant's jeans were searched on the booking table, which is outside the camera's view. Wright was unable to observe Keist's

search of the defendant's jeans and the video showed nothing of note. Keist testified that she searched the jeans on the booking table and located a baggie containing a powdery substance. Taylor testified that areas of the intake room were not covered by the cameras. Smith testified that he observed the jeans being handed to Keist to search and she performed the search outside of his view. Nothing about the contents of the undisclosed report could reasonably undermine confidence in the verdict. Because the contents of the undisclosed report are not arguably material to the defendant's guilt or punishment, his petition fails to make a gist of a constitutional claim of a *Brady* violation. Accordingly, the court did not err in summarily dismissing the defendant's petition.

¶ 19                                    III. CONCLUSION

¶ 20         The judgment of the circuit court of Bureau County is affirmed.

¶ 21         Affirmed.