**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230248-U

Order filed March 11, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0248 Circuit No. 17-CF-1264 |
| | ) ) | The Honorable |
| ROBERT A. MOYLAN, | ) ) | George J. Bakalis and Margaret O'Connell, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: (1) The circuit court did not err in denying defendant's motion to suppress eavesdrop recordings of counseling sessions; (2) the circuit court properly denied defendant's motion to suppress evidence seized from his offices; (3) admission of witness's testimony regarding comments defendant made during counseling session was not plain error; (4) the circuit court properly denied defendant's posttrial choice-of-counsel request; (5) defendant's forgery convictions did not violate the one-act, one-crime rule; and (6) defendant's eight-year aggregate sentence was not excessive or improper.

¶ 2        Defendant, Robert A. Moylan, was found guilty of seven counts of forgery for signing and delivering false documents in which he stated that his clients had successfully completed court-ordered counseling services. The circuit court sentenced him to an aggregate term of eight years' imprisonment. Defendant appeals, claiming the court erred in (1) denying his motion to suppress eavesdrop recordings of counseling sessions, (2) denying his motion to suppress evidence seized from his offices, (3) allowing a client to testify about statements he made during counseling sessions, (4) denying his request for the public defender at sentencing, (5) ordering him to serve an aggregate term of eight years in prison, and (6) entering convictions on six counts of forgery in violation of the one-act, one-crime rule. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In August 2017, defendant was indicted on seven counts of forgery (720 ILCS 5/17-3(a)(1), (a)(2) (West 2016)), fourteen counts of insurance fraud (*id.* § 17-10.5(a)(1)), one count of aggravated insurance fraud (*id.* § 17-10.5(b)(1)), and one count of wire fraud (*id*. § 17-24(b)(1), (2)(A)). The indictments alleged that in July 2016 and February 2017, defendant created and delivered letters which falsely stated that David Molenkamp and Christopher Merkes completed court-ordered counseling for driving under the influence (DUI), made false insurance claims to obtain payment for the services, and knowingly devised a scheme to defraud BlueCross BlueShield of Illinois (BCBS). Relevant to this appeal, defendant was charged as follows: (1) count 1 alleged defendant knowingly made a false document addressed to Merkes' employer; (2) count 3 alleged defendant knowingly made a second false document on Merkes' behalf addressed "to whom it may concern;" (3) count 5 alleged defendant knowingly made a false document on Molenkamp's behalf addressed to the Du Page County probation department; (4) counts 2, 4, and 6 alleged he delivered the false documents named in counts 1, 3, and 5 to Merkes and the Du Page County

2

probation department; and (5) count 7 alleged he knowingly delivered a false document on Molenkamp's behalf to the clerk of the Du Page County circuit court.

¶ 5                    A. Motion to Suppress Eavesdrop Recordings

¶ 6        On March 16, 2020, defendant's attorney, Richard Dvorak, filed a motion to suppress eavesdrop evidence, challenging an order authorizing the use of an eavesdropping device entered by Judge Paul Marchese on January 10, 2017, and claiming that evidentiary notice provided by the State violated the 90-day rule.

¶ 7        At the hearing on the motion, Cheryl York, an investigator with the Du Page County State's Attorney's Office, testified that she asked Merkes to cooperate in an investigation of defendant after Merkes was ordered to obtain DUI counseling. Merkes agreed and sought defendant's counseling services to satisfy the court's order. On January 10, 2017, York applied for use of an eavesdropping device to record Merkes' counseling sessions with defendant. The application was accompanied by a consent form signed by Merkes. Judge Marchese approved the application and entered an order authorizing the recordings. York testified that she turned on the device before each counseling session. Merkes then met York after the session, and she turned the device off. The eavesdrops concluded on March 11, 2017, with more than 20 hours of recordings.

¶ 8        By stipulation of the parties, York's application for the eavesdropping device was also admitted into evidence. The application provided an 18-page detailed description of her investigation, including her conversations with Molenkamp's girlfriend, Camille Pascale, which initiated the investigation; her conversations with Molenkamp regarding his DUI counseling with defendant; and her interactions with the informant, Merkes.

¶ 9        Defendant testified that he was a psychotherapist and a licensed Division of Alcoholism and Substance Abuse (DASA) counselor in Illinois, providing court-ordered substance abuse

3

counseling for those facing DUI charges. He reviewed the transcript of the recordings, and he agreed that they represented the conversations he had with Merkes during their counsel sessions.

¶ 10        Judge George Bakalis took the matter under advisement and issued his ruling on June 15, 2020. At that hearing, prior to the court's pronouncement, defendant made an oral claim of ineffective assistance and requested the appointment of a public defender. He claimed, among other things, that he could not afford private counsel. The court allowed attorney Dvorak to withdraw and appointed Deputy Chief Public Defender Kyle Rubeck. Judge Bakalis then ruled on defendant's motion, denying defendant's request to suppress the recordings. In a written memorandum, the court rejected defendant's argument that the eavesdrop evidence should be suppressed because the underlying order violated federal and state law. The court concluded that the order authorizing the overhears was legally sufficient and the State's failure to comply with the 90-day notice provision of the eavesdrop recording statute, while a technical violation of the rule, did not require suppression (see 725 ILCS 5/108A-8(a) (West 2016) (requiring notice to the party overheard within 90 days after expiration of the authorization order)).

¶ 11                              B. Pretrial Status Hearings

¶ 12        At a status hearing on June 22, 2020, the public defender's office informed the court that a conflict existed between Investigator York and Chief Public Defender Jeffery York.[1] The court granted the public defender's office leave to withdraw based on the conflict and appointed William Worobec, who was present in court and ready to accept the case.

---

[1] The record indicates that Investigator York was Chief Public Defender York's spouse in June 2020.

¶ 13    On August 3, 2021, attorney Worobec sought leave to withdraw at a hearing before Judge Margaret O'Connell. Worobec asserted that defendant, among other things, continuously insisted that Worobec file frivolous motions and filed a complaint with the Attorney Registration and Disciplinary Commission (ARDC) questioning Worobec's fitness as an attorney. The court allowed Worobec to withdraw. The hearing then continued, with defendant persisting in his desire for a "court-appointed lawyer," to which the court responded:

> "You have the right to have a lawyer. You just told me that Mr. Worobec is ineffective. You filed a pleading yesterday that was close to probably over 800 pages. I am not going to force you to stay in a relationship with an attorney that you believe to be ineffective."

The court granted defendant a continuance to find another attorney, and the cause was rescheduled.

¶ 14    On September 30, 2021, Judge O'Connell held an emergency hearing to address defendant's refusal to accept discovery. During the proceeding, the court noted that defendant attacked previous attorneys who represented him by lodging criminal complaints and agency investigations against them. It then clarified that defendant was proceeding as a self-represented litigant, recognizing that defendant previously waived the right to counsel and asking if he understood that waiver. Defendant responded, "I understand, I'm going *pro se*. That's what I was trying to do."

¶ 15              C. Motion to Suppress Evidence Obtain Through Search Warrants

¶ 16    Defendant subsequently hired private counsel, Garry Payton. On February 22, 2023, Payton filed two motions to suppress evidence that contained similar language. Both motions claimed that the State conducted "illegal searches and seizures" of defendant's offices in Lisle and Naperville based on search warrants issued on September 14, 2016, and used documents seized

5

during those illegal searches to further its investigation. In the motions, defense counsel argued that the underlying search warrants were invalid because they were "general warrants," allowing for the indiscriminate search and seizure of documents that were not related to the case. He also claimed that the State seized patient files that were privileged and confidential under state and federal law.

¶ 17 The circuit court denied both motions. In doing so, the court reviewed Investigator York's search-warrant applications detailing her investigation as well as her conversations with Pascale, Molenkamp, and defendant. York's applications stated that Pascale informed her that Molenkamp had not completed 75 hours of counseling and that, while serving a grand jury subpoena, defendant admitted to her that Molenkamp only completed a fraction of the DUI counseling required by the court. The applications requested authorization to search defendant's offices for "[a]ny and all documents concerning individuals who are attending counseling with Robert A. Moylan and/or the offices of Robert A. Moylan, LCPC, pursuant to sentencings in Du Page County Circuit Court Clerk's Office cases and/or sentences in cases of any other court systems[ ] ***." More specifically, they sought approval to seize emails and other communications between defendant and DUI court monitoring programs, logs of counseling hours completed with DUI clients, and documents associated with DUI court cases. After considering the applications and the parties' arguments, the court ruled that defendant's attack of the underlying search warrants was insufficient and that the warrants were properly issued. The court also concluded that neither the privacy rules for substance abuse patients codified in part 2 of Title 42 of the Code of Federal Regulations (42 C.F.R. § 2.1 *et seq.* (2022)) nor those found in the Health Insurance Portability and Accountability Act (HIPAA) (Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified at 42 U.S.C. § 1320d-2 (2022))) applied to this case.

6

¶ 18                                D. Trial Proceedings

¶ 19          Trial began on April 12, 2023. After opening statements, defendant claimed that Payton was ineffective and stated that he wished to represent himself. The court cautioned defendant against self-representation, but defendant insisted, stating several times, "[h]e's not my lawyer. I fire you. He is no longer my lawyer," "I am going *pro se*," and "[h]e's no longer my attorney." Eventually, the court relented and allowed Payton to withdraw. The court then admonished defendant pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). Defendant stated that he understood his rights and wished to proceed without the assistance of counsel.

¶ 20          Merkes testified that he was found guilty of DUI and sentenced to 18 months' court supervision. As part of his sentence, he was required to complete 100 hours of community service and a monitoring program that included 75 hours of DUI counseling. Merkes agreed to seek counseling from defendant and to assist York in her investigation of defendant by wearing a recording device during his counseling sessions. He identified the State's exhibits 1 and 2 as containing audio files of his recorded sessions. A compiled 56-minute recording was then played for the jury over defendant's objection. It contained a few minutes of discussion between defendant and Merkes, some background noise while Merkes waited in the reception area, and approximately 30 hours of silence. Merkes stated that he was in another room reading a therapy book during the silence. Merkes testified that the total time he actually received counseling from defendant was 25 hours and 37 minutes.

¶ 21          According to Merkes, relatively little time was spent talking about impaired driving or substance abuse. Defendant engaged in "a lot of political talk." He characterized law enforcement as "legal mafia" and prosecutors as "pimps." In one session, defendant told Merkes that he believed police officers pulled drivers over and charged them with DUI as "a money grab." At one point in

the recordings, Merkes paid defendant $100 in cash, and defendant said he was going to a "titty bar." Merkes identified these statements on the recordings during his testimony.

¶ 22     Merkes further testified that, in addition to the cash payments, defendant received payments from Merkes' insurance company, BCBS. The prosecutor then asked Merkes to review a list of payments, and Merkes confirmed that BCBS made those payments to defendant on his behalf.

¶ 23     Finally, Merkes testified that at his last session defendant gave him two letters stating that he had successfully completed 75 hours of DUI counseling. One letter was addressed to Merkes' employer, and the other letter was addressed "to whom it may concern." Both letters were dated February 15, 2017, and signed by defendant.

¶ 24     Probation department supervisor Richard Krajewski testified that Merkes was required to complete 75 hours of DUI counseling and that 25 hours of counseling would not satisfy the court's order. He identified State's exhibit No. 7 as the February 15, 2017, letters written by defendant, stating that Merkes had successfully completed his court-ordered DUI counseling. Krajewski also testified that Molenkamp was required to complete 75 hours of court-ordered DUI counseling and identified State's exhibit No. 18 as a letter written by defendant dated July 16, 2016, which stated that Molenkamp completed 75 hours of counseling. Darlene Baptiste, the deputy chief of administration for the Du Page County probation department, testified that she received the June 16, 2016, letter and forwarded it to the circuit court.

¶ 25     Du Page County State's Attorney's Office Investigator David Zdan testified that he began investigating defendant following a tip from Molenkamp's ex-girlfriend, Pascale, that Molenkamp did not complete his court-ordered DUI counseling sessions. Zdan identified a grand jury subpoena for Molenkamp's patient records that was issued on September 8, 2016. He and Investigator York

8

went to defendant's office in Lisle that day to serve the subpoena. While they were attempting to obtain the records, defendant started talking and informed them that he just wanted to "help" Molenkamp. Defendant further stated that Molenkamp only completed about 50% of his counseling hours. When Zdan and York asked defendant exactly how many hours Molenkamp actually completed, he responded "45% or 30%." They asked defendant to write a statement and sign it, and he did. Zdan identified State's exhibit No. 20 as the same statement defendant signed that day. Defendant then gave Molenkamp's file to Zdan and York as they left his office.

¶ 26    Following the State's case-in-chief, defendant rested. The jury found defendant guilty of forgery on all seven counts (counts I through VII) and not guilty of insurance fraud, aggravated insurance fraud, and wire fraud (counts VIII through XXIII). Defendant's *pro se* motion for a new trial or judgment notwithstanding the verdict was denied.

¶ 27                    D. Sentencing Proceedings

¶ 28    As the sentencing hearing began, attorney Payton, who had been present throughout the trial, asked Judge O'Connell to appoint the public defender to represent defendant. The court declined the invitation, noting that Payton was not authorized to act on defendant's behalf because defendant elected to proceed as a self-represented litigant. Defendant then addressed the court himself and the following discussion occurred:

    DEFENDANT: Right, right. I would like a [p]ublic [d]efender because I'm indigent. So I would like to have that heard. I had the proper form given to Mr. Payton, but I could fill one out here because I don't have enough money. So I would like—because I—

    THE COURT: You can't get the [p]ublic [d]efender because they're conflicted out because you went through their office, and then I gave you conflict counsel. And so now the only thing that you're eligible for would be private counsel, and Mr. Payton withdrew.

9

DEFENDANT: For the record, you didn't give me private counsel. Private counsel I would—

THE COURT: No, I didn't—I gave you conflict counsel. That's what I said.

DEFENDANT: That's not true. You—I was denied my right to conflict counsel. For the record—

THE COURT: Mr. Worobec is our conflict counsel.

DEFENDANT: Right. You did not give him to me. You did not give him to me. I had—he was my appointed counsel. And what happened was I was aware of the continued misconduct by him, and I requested on the record that a substitution of counsel be heard because that's my statutory right under the [s]ixth [a]mendment because I was aware of misconduct by him. So what happened was you denied my right to counsel back then.

THE COURT: No. I didn't deny your right. Mr. Worobec sought to withdraw and he withdrew.

DEFENDANT: And I opposed that withdrawal vehemently. Why? Because I have never been able to want to go *pro se*, and that's on the record. On August 2nd, 2021, that is the subject of my motion to recuse for cause. Every person from the moment the adversarial proceedings begin has the right to counsel. My right to counsel was violated by Mr. Worobec. So I'd like a [p]ublic [d]efender be appointed to represent me.

THE COURT: The Public Defender's Office is conflicted out. So there is no [p]ublic [d]efender that can represent you. You've had private counsel. You had conflict counsel. And I have before me now your notice of motion for reconsideration of new trial to reconsider the court's finding of guilty which has been filed by you *pro se*. First words. Robert Moylan, *pro se*.

10

DEFENDANT: Right.

THE COURT: Do you want to be heard on this motion?

***

DEFENDANT: I would like to be heard on this motion.

The court then heard both parties' arguments and denied defendant's posttrial motion.

¶ 29    Moving into sentencing, defendant once again asked to be represented by the public defender:

"DEFENDANT: I would like a [p]ublic [d]efender for that. That would be my right. I'm indigent. So I'd like to be heard.

THE COURT: Okay. But the Public Defender's Office has been conflicted out prior, and you have refused the use of conflict counsel.

DEFENDANT: No, I have not refused it. I never refused it.

THE COURT: You did. Okay. You did. You fired Mr. Worobec.

DEFENDANT: I didn't. I didn't fire him. That's a part of my judicial rule for cause against you. The fact is I was entitled to a substitution of counsel. You misinterpreted that and that—

THE COURT: But you don't—you would have to pay for that attorney.

DEFENDANT: No. I was indigent at the time and so—

THE COURT: You were not indigent because you then turned around and you hired Mr. Payton.

DEFENDANT: That's not true.

THE COURT: Mr. Payton was here earlier today. You could have Mr. Payton be your lawyer. You just wish to delay these proceedings.

11

DEFENDANT: No. On August 2nd, 2021, we had a hearing on the substitution of counsel for Mr. Worobec. At that time I was indigent. So I—

THE COURT: You never informed me of that in August and then you—

DEFENDANT: Well, he was my attorney. He was a publically [*sic*] appointed counsel, of course. By the fact that he was my—Mr. Worobec was appointed by Judge Bakalis.

THE COURT: You had conflict counsel because the Public Defender's Office could no longer represent you.

DEFENDANT: Right. So you—

THE COURT: So you fired Mr. Worobec.

DEFENDANT: I did not fire him.

THE COURT: And then you fired Mr. Payton.

DEFENDANT: I did not fire him. For the record, I asked for a substitution of counsel because I was aware of unlawful conduct."

The court directed defendant's attention to the presentence investigation report (PSI), and defendant proceeded to sentencing as a self-represented litigant.

¶ 30     Defendant's PSI revealed that he was 61 years old at the time of sentencing, had a prior conviction for domestic battery in 1998, received a bachelor's degree from Northwestern, obtained master's degrees from Loyola University and Northeastern Illinois University, was self-employed as a mental health counselor, had been married three times, and had a 27-year-old daughter. Defendant also presented two character witnesses at the sentencing hearing who testified that defendant was a devoted friend and counselor, wrote books and articles about emotional therapy, and cared for his girlfriend's son who had been recently injured in a car accident. The court

12

sentenced defendant to concurrent five-year prison terms on counts I-V and count VII and a consecutive three-year term on count VI, equating to an aggregate eight-year sentence.

¶ 31                                              II. ANALYSIS

¶ 32                              A. Suppression of Eavesdrop Recordings

¶ 33        On appeal, defendant argues that the circuit court erred in denying his motion to suppress the recordings of Merkes' counseling session because the State failed to fulfill the statutory requirements for authorization of an eavesdropping device. Specifically, he claims the application failed to establish reasonable cause to believe that relevant evidence would be obtained through use of the eavesdropping device. See 725 ILCS 5/108A-4 (West 2016). In addition, defendant complains the State failed to notify him of the recordings within 90 days of termination of the eavesdropping order as required by law.

¶ 34        When reviewing the circuit court's ruling on a motion to suppress, we ordinarily apply a two-part standard of review. *People v. Eubanks*, 2019 IL 123525, ¶ 33. We give deference to the court's factual findings and reverse them only if they are against the manifest weight of the evidence, while we review *de novo* the court's ultimate ruling on whether evidence should be suppressed. *People v. Cregan*, 2014 IL 113600, ¶ 22.

¶ 35        At the outset, defendant recognizes that pretrial counsel failed to raise the reasonable-cause challenge to the eavesdropping application in his motion to suppress. Failure to raise an error to the circuit court with sufficient specificity results in forfeiture. *People v. Steidl*, 142 Ill. 2d 204, 230 (1991). An issue that has been procedurally forfeited may be raised for the first time on appeal, if the alleged error rises to the level of plain error. *People v. Woods*, 214 Ill. 2d 455, 471 (2005). The plain error doctrine allows a reviewing court to address substantial errors if the evidence is closely balanced or if fundamental fairness so requires rather than finding the issue forfeited.

13

*People v. Donoho*, 204 Ill. 2d 159, 187, 273 (2003). Here, however, we find no error, let alone plain error, in the circuit court's order granting the application.

¶ 36        Article 108A of the Code of Criminal Procedure of 1963 (725 ILCS 5/108A-1 *et seq.* (West 2016)) permits a judge to authorize or approve use of an eavesdropping device "where it is found that: "(a) one party to the conversation has or will have consented to the use of the device; (b) there is reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony under Illinois law; [and] (c) there is reasonable cause for believing that particular conversations concerning that felony offense will be obtained through such use[.]" *Id.* § 108A-4. The phrase "reasonable cause" in the eavesdropping statute is synonymous with probable cause. *People v. Calgaro*, 348 Ill. App. 3d 297, 301 (2004).

¶ 37        Because restrictions on the use of an eavesdropping device are purely statutory, the fourth amendment is not implicated. *People v. Sylvester*, 86 Ill. App. 3d 186, 190 (1980). Nevertheless, "Illinois citizens are entitled to be safeguarded from unnecessary governmental surveillance and other unreasonable intrusions into their privacy." *People v. Bockman*, 328 Ill. App. 3d 384, 388 (2002). Therefore, the statutory constraints are strictly construed and an application to use an eavesdropping device must establish reasonable cause to believe the recordings will obtain particular conversations about the described felony. *Calgaro*, 348 Ill. App. 3d at 301. On review, "[a]n application to use an eavesdropping device should be viewed in a commonsense manner and the issuing judge's conclusions that reasonable cause exists should be given great deference when reviewed by subsequent judges." *Id.*

¶ 38        In this case, Judge Marchese concluded that the application was legally sufficient. The application, as found in the record on appeal, supports that finding. Investigator York's 18-page submission provided a detailed description of her conversations with Molenkamp's ex-girlfriend,

as well as her conversations with Molenkamp, and included information regarding her conversations with defendant. In those conversations, it was alleged that defendant allowed Molenkamp to complete DUI court-ordered counseling without recording the required 75 hours and that defendant wrote letters indicating that Molenkamp had successfully completed his counseling. The application also named Merkes as the informant and stated that he had contacted defendant about DUI counseling and scheduled a counseling session. Using common sense to analyze these facts, the judge concluded that the application provided probable cause for believing that the eavesdropping device would produce conversations related to the criminal activity of forgery. The issuing judge was in the best position to evaluate the circumstances and witnesses, and we find no basis in the record to overturn Judge Marchese's order granting the application. Thus, forfeiture aside, we reject defendant's challenge regarding the legal sufficiency of the underlying application.

¶ 39    Alternatively, defendant alleges that pretrial counsel was ineffective for failing to raise this argument below. To prevail on a claim of ineffective assistance, a defendant must generally establish both that counsel's performance was deficient and that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance is highly deferential, and a court considering an ineffectiveness claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Because we have determined that the underlying application met the statutory requirements, we cannot say counsel was ineffective for neglecting to raise the issue in defendant's motion to suppress. See *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 33 (counsel cannot be deemed ineffective for failing to raise an objection that would have been futile).

15

¶ 40    We further reject defendant's claim of a notice violation. As the circuit court concluded in denying the motion to suppress, any violation of the notice provision of the eavesdropping statute was harmless. Section 108A-8(a) of the eavesdropping statute requires that "within a reasonable time, but *** not later than 90 days after the termination of the period of an order or extension thereof" notice shall be provided to the person named in the eavesdropping application. 725 ILCS 5/108A-8(a) (West 2016). Although the parties agree that notice in this case occurred after the statutory period, violation of the 90-day rule is considered a technical violation that does not require suppression. See *People v. Henderson*, 129 Ill. App. 3d 611, 617-18 (1984) (finding a delay of the 90-day notice requirement under the statue did not require suppression); see also *People v. Nieves*, 92 Ill. 2d 452, 462-463 (1982) (noting that, while there was a 16-day delay in turning the recordings over to the court, the recordings were returned in enough time for the court to review them, and there was no evidence of bad faith by the State). Here, the court authorized use of an eavesdropping device on January 10, 2017. At the end of the application period, in March 2017, Judge Marchese reviewed 20 hours of recordings and released them to the State. The State disclosed them in discovery to defendant on August 24, 2017, along with written notice that it intended to use them at trial. Thus, defendant was notified, albeit after the 90-day period, and given an opportunity to challenge the admissibility of the recordings prior to trial, which he did. Because the application complied with the statute and there was no evidence of bad faith by the State in its belated notice, the circuit court did not err in denying defendant's motion to suppress the eavesdrop recordings.

¶ 41               B. Suppression of Evidence Obtained Through Search Warrants

¶ 42    Next, defendant argues that the circuit court erred in denying his motion to suppress evidence obtained from his offices because the search warrants authorizing the seizures were

16

overly broad warrants executed in violation of his fourth amendment rights and invaded the privacy interests of his patients.

¶ 43                                    1. *Fourth Amendment Violations*

¶ 44        The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Similarly, under our state constitution, "[t]he people shall have the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches[ ] [and] seizures." Ill. Const. 1970, art. I, § 6. We interpret this provision of the Illinois Constitution in "limited lockstep" with the fourth amendment. See *People v. Caballes*, 221 Ill. 2d 282, 313 (2006).

¶ 45        "A valid search warrant must state with particularity the place to be searched and the persons or things to be seized." *People v. Gonzalez*, 316 Ill. App. 3d 354, 360 (2000); see 725 ILCS 5/108-7 (West 2022). The purpose of the particularity requirement is "to prevent a general exploratory rummaging in a person's belongings." *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999). "The degree of particularity that is required in any given situation may not be determined by resorting to some simple formulaic approach, but instead 'varies depending on the circumstances of the case and the types of items involved.' " *In re Search of 3817 W. West End, First Floor, Chicago, Illinois, 60621*, 321 F. Supp. 2d 953, 958 (N.D. Ill. 2004) (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)). It is well established that a detailed description of the property to be seized is not required in a search warrant. *People v. Batac*, 259 Ill. App. 3d 415, 420 (1994). Generally, "when property of a specified nature is to be seized rather than particular property[,] then a description of its characteristics is sufficient." *People v. Curry*, 56 Ill. 2d 162, 171 (1974).

¶ 46        Initially, we note the State's argument that defendant forfeited this issue is unavailing. The motion to suppress argued that the search warrant in this case was invalid, in part, because it was a "general warrant that authorized the indiscriminate and wholesale search and seizure" of defendant's papers and properties. Defendant's posttrial motion further alleged that defendant "filed a meritorious motion to suppress search warrant" and that the court "committed legal error by denying this meritorious motion." Thus, the search warrant issue was properly preserved for review. See *People v. Enoch*, 122 Ill. 2d 176, 187 (1988).

¶ 47        On the merits, the warrants satisfied the particularity requirement. The warrants described the items to be seized as "documents concerning individuals who were attending counseling with Robert A. Moylan and/or the Offices of Robert A. Moylan, LCPC, pursuant to sentences in Du Page County Circuit Court Clerk's Office cases and/or sentences of cases in any other court systems." The warrants were not directed at particular property but rather at items associated with the false reporting of court-ordered counseling—items which are distinguishable from confidential medical or psychological information. Moreover, the warrants focused on court-ordered client files, logs of counseling hours completed for those clients, documents associated with court-ordered cases, and correspondence with the court or court monitoring programs concerning counseling that those clients completed. Accordingly, we conclude that the warrants described the items to be seized with sufficient particularity.

¶ 48        Turning to probable cause, the issuing judge's task " 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v. Smith*, 372 Ill. App. 3d 179, 184 (2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238

18

(1983)). Whether the necessary probable cause exists is governed by common sense considerations that are factual and practical, not by technical nuances. *People v. Kornegay*, 2014 IL App (1st) 122573, ¶ 21. On review, our job is to merely ensure that the judge issuing the search warrant had a substantial basis for concluding that probable cause existed. *Smith*, 372 Ill. App. 3d at 184. Here, that standard has been met. Based on York's application describing the circumstances of her investigation and the conversations she had with Pascale, Molenkamp, and defendant, the issuing judge had a sufficient basis upon which to conclude that probable cause existed to search defendant's offices.

¶ 49                    2. *Privacy Interests Under State and Federal Law*

¶ 50        Defendant alternatively argues that the evidence should have been suppressed because the search warrants violated his patients' privacy rights under several state and federal statutes, including: (1) the Professional Counselor and Clinical Professional Counselor Licensing and Practice Act (Professional Counselor Act) (225 ILCS 107/75 (West 2022) (establishing counselor-patient privilege)); (2) the Mental Health and Developmental Disabilities Confidentiality Act (Mental Health Act) (740 ILCS 110/1 *et seq.* (West 2022)); (3) the Illinois Substance Use Disorder Act (Substance Use Disorder Act) (20 ILCS 301/1-1 *et seq.* (West 2022)); (4) the privacy rules in part 2 of Title 42 of the Code of Federal Regulations; and (5) HIPAA. We will briefly discuss our rejection of each claim.

¶ 51        The counsel-patient privilege under the Professional Counselor Act creates a general rule of nondisclosure regarding information a licensed professional counselor garners while treating a mental health patient. See 225 ILC 107/75(a) (West 2022) ("No licensed professional counselor or licensed clinical professional counselor shall disclose any information acquired from persons consulting the counselor in a professional capacity ***."). The privilege extends to the disclosure

19

of mental health records of any nonparty patient. *Giangiulio v. Ingalls Memorial Hospital*, 365 Ill. App. 3d 823, 832 (2006). To establish a counselor-patient privilege, the party seeking to assert it must show facts giving rise to the privilege. See *Tomczak v. Ingalls Memorial Hospital*, 359 Ill. App. 3d 448, 454 (2005).

¶ 52    The statutory language used to establish the counselor-patient privilege is similar to the language used in the physician-patient statute. *Compare* 735 ILCS 5/8-802 (West 2022), *with* 225 ILCS 107/75 (West 2022). Our supreme court has recognized that the applicability of the physician-patient privilege depends on whether the nonparty patient information sought by a party is general information or is treatment information that is necessary to enable a physician to serve a patient. *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 42. The statutory privilege does not apply to raw data regarding treatment and procedures performed by physicians or counselors. *Id.* Here, the information utilized at trial related to the number of counseling hours reported to court monitoring programs and the billable hours submitted to insurance providers. In other words, the evidence defendant sought to suppress was not privileged mental health information and, therefore, did not violate the counselor-patient privilege.

¶ 53    Likewise, the warrants did not invade the privacy of defendant's patients under the Mental Health Act. The Mental Health Act provides that any record kept by therapists or agencies "in the course of providing mental health or developmental disabilities service[s] to a [patient]" shall be confidential and shall not be disclosed except as provided in the Act. 740 ILCS 110/2, 3(a) (West 2022). Again, none of the evidence defendant sought to suppress was privileged mental health information obtained from patient files. The charts of counseling hours and insurance data were based on information from office records maintained in the course of business, not confidential mental health information. Through the search warrants, the State obtained information showing

20

the hours of completed counseling, the method of billing defendant utilized, and the insurance payments he submitted and/or received. The mental health records of defendant's patients were not admitted as evidence at trial.

¶ 54        The next two statutes referenced by defendant need to be analyzed together. Section 30-5 of the Substance Use Disorder Act states that substance abuse treatment records are confidential and may be disclosed only in accordance with federal laws and regulations concerning confidentiality found in Title 42 of the United States Code and part 2 of Title 42 of the Code of Federal Regulations. 20 ILCS 301/30-5(bb) (West 2022) ("Records of the identity, diagnosis, prognosis or treatment of any patient maintained in connection with *** substance use disorder *** treatment *** shall be confidential and may be disclosed only in accordance with the provisions of federal law and regulations concerning the confidentiality of substance use disorder patient records as contained in 42 U.S.C. Sections 290dd-2 and 42 C[.]F[.]R[.] Part 2 ***."). However, the confidentiality rules in these statutes only apply to federally assisted programs defined as programs "conducted, regulated, or directly or indirectly assisted by any department or agency of the United States." 42 U.S.C. § 290dd-2 (2022); see 42 C.F.R. § 2.63 (2022) (regulating disclosure of confidential communications "made by a patient of a part 2 program"). Here, there is no evidence that defendant's counseling practice received federal funding. Thus, defendant's arguments that the search warrants invaded his clients' privacy under the Substance Use Disorder Act and the Code of Federal Procedure also fail.

¶ 55        Last, defendant maintains the evidence should have been suppressed because the State's access to his clients' mental health records violated HIPAA. We disagree. HIPAA regulates when and how protected health information may be disclosed. See 42 U.S.C. § 1320d *et seq.* (2022). In relevant part, it permits the disclosure of protected health information to law enforcement officials

21

in compliance with, and as limited by, a court-ordered warrant. 45 C.F.R. § 164.512(f)(1)(ii)(A) (2022). HIPAA does not create a privilege for patients' medical information; it merely provides the procedures to follow for the disclosure of that information from a "covered entity." 45 C.F.R. § 164.508(a) (2022); see *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004). "Although HIPAA provides for penalties against entities that fail to comply with its provisions [citation], law enforcement agencies, including the office of the State's Attorney, are not covered entities under HIPAA." *People v. Bauer*, 402 Ill. App. 3d 1149, 1158 (2010). Further, HIPAA does not contain a remedy for the suppression of protected health information obtained in violation of its procedures. *People v. Beck*, 2017 IL App (4th) 160654, ¶ 132.

¶ 56    Here, even if the search warrants failed to comply with HIPAA, defendant does not cite any authority compelling the suppression of mental health records, nor can he. See *Bauer*, 402 Ill. App. 3d at 1158 (HIPAA does not provide that evidence obtained in violation of HIPAA should be suppressed or excluded in a criminal setting). Moreover, the record reflects no prejudice to defendant in light of HIPAA violations where the court ultimately admitted relevant, non-privileged information. See *Beck*, 2017 IL App (4th) 160654, ¶ 133 (finding no error where, had the State complied with HIPPA requirements, the results would have been the same). Consequently, we affirm the court's order denying defendant's motion to suppress evidence obtained based on the search warrants.

¶ 57    To be clear, and contrary to the State's contention, a therapist may assert the counselor-patient privilege on behalf of a patient under Illinois law. See 225 ILC 107/75 (West 2022). In this case, however, the circuit court did not err in denying defendant's motion to suppress based on privilege where the proposed evidence did not involve the patient's confidential treatment

22

information, none of the information contained in the seized patient files was offered as evidence, and the underlying search warrants were not legally deficient.

¶ 58                                C. Merkes' Trial Testimony

¶ 59          Defendant further claims that Merkes' testimony regarding statements defendant made during counseling sessions denied him a fair trial because it was irrelevant to the forgery charges and portrayed him as an "unlikable" individual. Defendant acknowledges his forfeiture below but asks us to review this issue on the basis of plain error. The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error only if (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill.2d 167, 186-87 (2005). Under either prong, defendant must show that the error "caused a severe threat to the fairness" of his trial. *People v. Thurow*, 203 Ill. 2d 352, 363 (2003).

¶ 60          In this instance, the evidence was not close. Two of defendant's clients testified that they did not complete their court-ordered counseling, that defendant was aware they had not met their counseling requirements, and that defendant wrote letters on their behalf, stating that they successfully completed their DUI counseling. Investigators York and Znad testified that defendant admitted that Molenkamp had not completed his hours. Merkes and probation officer Krajewski stated that defendant provided them with letters stating that his clients had successfully completed the required hours of court-ordered counseling. Thus, any error did not result in prejudice.

¶ 61          Second, the error was not serious. Our supreme court has compared the second prong of plain-error review to structural error and concluded that reversal is required "where an error is deemed structural, *i.e.*, a systemic error which serves to erode the integrity of the judicial process and undermine the fairness of the defendant's trial." (Internal quotation marks omitted.) *People v.*

23

*Thompson*, 238 Ill. 2d 598, 613-14, (2010) (citing *Herron*, 215 Ill. 2d at 186.) Structural errors "include a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Id.* at 609. Second prong error is not restricted to these six structural errors. See *People v. Clark*, 2016 IL 118845, ¶ 42. But to rise to the level of presumptive prejudice, the error must be of such significance that it "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." (Internal quotation marks omitted.) *People v. Johnson*, 2017 IL App (2d) 141241, ¶ 51. The error defendant complains of here—the introduction of irrelevant testimony—does not fit within the limited class of cases where structural error has been found, nor did Merkes' testimony affect the fairness of defendant's trial or challenge the integrity of the judicial process. See *People v. Williams*, 2022 IL App (2d) 200455, ¶ 132 (error in admitting irrelevant remarks falls short of the type of structural errors discussed under second-prong plain error). Thus, even if we were to find error in the admission of Merkes' testimony, it does not rise to the level of second-prong plain error such that reversal is required.

¶ 62                                    D. Defendant's Right to Counsel of Choice

¶ 63            Defendant next challenges the denial of his posttrial motion and his sentence based on the violation of his sixth amendment right to counsel of choice. He argues the trial court should have granted his request to reappoint counsel to represent him during posttrial proceedings and at sentencing and that the court's failure to do so amounted to second-prong plain error.

¶ 64            The second prong of the plain-error doctrine allows us to remedy a serious error that affected the fairness of the defendant's trial or sentence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Whether the trial court erred in denying defendant his constitutional right to the counsel of his choice raises legitimate concern about the integrity of the judicial process. *Wheat v. United*

24

*States*, 486 U.S. 153, 160 (1988). Under either prong of plain error, we first determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 65    The sixth amendment of the United State Constitution guarantees criminal defendants both the right to the effective assistance of counsel and the right to counsel of choice. U.S. Const., amend. VI; *People v. Holmes*, 141 Ill. 2d 204, 217 (1990). "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, the right to counsel of choice, although fundamental, is not without limitations. See *Holmes*, 141 Ill. 2d at 217.

¶ 66    A criminal defendant does not have the right to select an attorney he cannot afford, counsel who has a conflict of interest, or an attorney who declines to represent him. *People v. Howard*, 376 Ill. App. 3d 322, 335, (2007) (citing *Wheat*, 486 U.S. at 159). As applied here, these established limits satisfy a court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. "Accordingly, it is not only a criminal defendant's sixth amendment right at stake when a court considers the accused's insistence on the counsel of his choosing, but also the tribunal's institutional interest in the rendition of just verdicts and the administration of fair trials." (Internal quotation marks omitted.) *Howard*, 376 Ill. App. 3d at 336.

¶ 67    "In balancing the judicial interest of trying the case with due diligence and the defendant's constitutional right to counsel of choice, the court must inquire into the actual request to determine whether it is being used merely as a delaying tactic." *People v. Burrell*, 228 Ill. App. 3d 133, 142 (1992). Multiple factors should be considered in making such an inquiry, including "whether defendant articulates an acceptable reason for desiring new counsel; whether the defendant has

25

continuously been in custody; whether he has informed the trial court of his efforts to obtain counsel; whether he has cooperated with current counsel; and the length of time defendant has been represented by current counsel." *People v. Tucker*, 382 Ill. App. 3d 916, 920 (2008).

¶ 68        Circuit courts are granted "wide latitude in balancing the right to counsel of choice against the needs of fairness [citation] and against the demands of its calendar." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 152 (2006). It is within the court's discretion to determine whether the defendant's right to selection of counsel unduly interferes with the orderly process of judicial administration. *Tucker*, 382 Ill. App. 3d at 920. No abuse of discretion occurs in denying a motion if new counsel is not specifically identified or does not "stand ready, willing, and able" to make an appearance on defendant's behalf. *Burrell*, 228 Ill. App. 3d at 142.

¶ 69        In  this case, the circuit court was familiar with defendant's history of multiple requests to appoint a public defender, proceed as a self-represented litigant, and hire private counsel. Defendant vacillated between asserting his right to counsel and waiving that right numerous times for more than six years as the case proceeded to trial. In this instance, defendant filed a *pro se* motion for a new trial the day before the sentencing hearing with no written request for counsel. At the sentencing hearing, the court declined defendant's request for the public defender because it had been previously determined that the public defender's office could not be involved in defendant's case due to a conflict:

> "All right. Mr. Moylan, I don't want to play games with you anymore. So it's one of two things here. All right? I have admonished you. We have gone back and forth about this. You tell me that you want to be *pro se*. You fire your lawyer. You tell me you want to be *pro se*. You file all of these motions saying that you're *pro se*. And now you come in here clearly just to delay these proceedings yet again, and now you're telling me you want

the Public Defender when you know that the Public Defender is disqualified because you burned through that office."

¶ 70　　　Notably, defendant was aware of the conflict ruling. Moreover, after the conflict arose and the court appointed attorney Worobec, defendant claimed Worobec was ineffective, causing Worobec to withdraw as his attorney. Defendant then hired private counsel a few months before trial but fired him on the day trial started. A review of the record further shows that whether counsel was appointed or retained, defendant refused to cooperate with his attorneys, not only failing to consider their advice but actively challenging their ability to practice law by filing criminal and disciplinary complaints against them. Additionally, defendant made numerous choice-of-counsel requests that the circuit court accommodated prior to trial. At sentencing, after the court properly declined to consider attorney Payton's motion to appoint the public defender (an improper motion given that he was not the attorney of record), defendant made the same request. He then abandoned that request and proceeded to present witnesses. These facts clearly support the court's finding that defendant's posttrial request was nothing more than a delay tactic; his request was, therefore, properly denied.

¶ 71　　　Defendant claims attorney Payton stood ready, willing, and able to represent defendant. But a review of the posttrial transcript refutes that position. Although Payton sought the court's permission to file an appearance on defendant's behalf, defendant gave no indication that he wished to engage in Payton's services, appointed or retained. Accordingly, Payton was not ready and able to represent defendant. Given defendant's failure to articulate the need for new counsel and persistent refusal to cooperate with his former attorneys, including the public defender and conflict counsel, the court did not err in denying his request to appoint the public defender in posttrial proceedings.

27

¶ 72                                    E. One-Act, One-Crime Violation

¶ 73        Defendant claims that three of his convictions for forgery should be vacated under one-act, one-crime principles because the harm or injury contemplated in the forgery statute can only result if false documents are made *or* delivered, but not both. Defendant admits that his posttrial motion failed to raise this issue and seeks second-prong plain error review. Under either prong of the plain error analysis, an error must first be found. *Eppinger*, 2013 IL 114121, ¶ 19.

¶ 74        The purpose of the one-act, one-crime rule is to prevent the State from carving out multiple offenses from the same culpable conduct. *People v. Harvey*, 211 Ill. 2d 368, 389, (2004). The rule provides that a defendant may not be convicted of multiple crimes based on the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). Under the one-act, one-crime rule, a single act is any overt or outward manifestation that will support a different offense. *Id.* "As long as there are multiple acts as defined in *King*, their interrelationship does not preclude multiple convictions." *People v. Angarola*, 387 Ill. App. 3d 732, 737 (2009) (citing *People v. Rodriguez*, 169 Ill. 2d 183, 189 (1996)).

¶ 75        To support a conviction of forgery, the State is required to prove beyond a reasonable doubt that, with the intent to defraud, the defendant knowingly either (1) made or altered a false document apparently capable of defrauding another (720 ILCS 5/17-3(a)(1) (West 2016)), or (2) issued or delivered such a document with knowledge of its lack of authenticity (*id.* § 17-3(a)(2)). In this case, the State charged defendant with making documents capable of defrauding another under section 17-3(a)(1) in counts 1, 3, and 5, and delivering those documents to Merkes and the Du Page County probation department under section 17-3(a)(2) in counts 2, 4, and 6. The acts that supported the charges of forgery were drafting three letters (two for Merkes and one for

28

Molenkamp) and delivering three letters (two to Merkes and one to the Du Page County probation department)—six separate acts supporting six separate convictions.

¶ 76    The State directs us to *People v. Horrell*, 381 Ill. App. 3d 571 (2008), *aff'd on other grounds*, 235 Ill. 2d 235 (2009), and *Angarola*, 387 Ill. App. 3d at 740. In *Horrell*, the defendant argued, as defendant does here, that the one-act, one-crime rule does not allow an accused to be convicted of forgery under both sections 17-3(a)(1) and 17-3(a)(2) of the Criminal Code of 2012 (720 ILCS 5/17-3 (West 2004)). *Horrell*, 381 Ill. App. 3d at 573. The court concluded that the one-act, one-crime rule allowed both convictions:

> "[T]he defendant was charged under section 17-3(a)(1) with the physical act of making the checks. Under section 17-3(a)(2), the defendant was charged with the separate physical act of delivering the forged checks. The act of making the checks was a different outward or overt manifestation from the act of delivering the checks. These separate physical acts support different offenses." *Id.* at 574.

In *Angarola*, the court relied on *Horrell* and reached the same conclusion:

> "The forgery statute criminalizes both the creation and the delivery of a fraudulent document, so that a defendant involved in either step may be prosecuted. However, defendant here was involved in both steps, and he accomplished each step by a separate act. We agree with *Horrell* that these separate acts can support separate convictions, and we reject defendant's argument to the contrary." *Angarola*, 387 Ill. App. 3d at 740.

Following *Horrell* and *Angarola*, we conclude that the one-act, one-crime rule does not preclude defendant's convictions for forgery based on the overt acts of making *and* delivering false documents.

¶ 77    F. Excessive Sentence

29

¶ 78      While defendant concedes that he failed to file a postsentence motion to preserve his excessive-sentence claim, he urges us to apply second-prong plain error, which may be invoked if the error was so egregious that it denied defendant a fair sentencing hearing. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). As we have previously stated, to obtain relief under the plain-error doctrine, defendant must first demonstrate that a clear error occurred. *Eppinger*, 2013 IL 114121, ¶ 19. Here, we find no sentencing error.

¶ 79      In determining an appropriate sentence, the circuit court must consider all relevant factors in mitigation and aggravation and "balance the retributive and rehabilitative purposes of the punishment." *People v. Weiser*, 2013 IL App (5th) 120055, ¶¶ 31-32. The circuit court is afforded substantial deference in sentencing because, unlike a reviewing court, it has an opportunity to weigh such factors as defendant's credibility, demeanor, moral character, mentality, environment, habits, and age. *People v. Snyder*, 2011 IL 111382, ¶ 36. The defendant's potential for rehabilitation, however, is not entitled to more weight than the aggravating factors. *Weiser*, 2013 IL App (5th) 120055, ¶ 32. A reviewing court cannot reweigh the aggravating and mitigating factors in reviewing a sentence, nor can it "substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Absent an abuse of discretion, we will not disturb a court's sentence on review. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. A sentence that falls within statutory limits is presumed proper. *Id.* ¶ 28. The presumption is rebutted only where a defendant demonstrates that the sentence imposed "greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.*

¶ 80      In this case, defendant was sentenced to five years' imprisonment, a sentence within the statutory range for forgery, a Class 3 felony. 720 ILCS 5/17-3(d)(1) (West 2016); 730 ILCS 5/5-

4.5-40 (West 2016) (a Class 3 felony is eligible for probation or between two and five years' imprisonment). The circuit court considered the evidence presented at the sentencing hearing, defendant's statement in allocution, and the arguments of defendant and the State. While the court did not give greater weight to defendant's age and his rehabilitative potential, it was not required to do so. See *Weiser*, 2013 IL App (5th) 120055, ¶ 32. Defendant's argument essentially requires this court to reweigh the relevant factors, which we cannot do.

¶ 81          In the alternative, defendant claims the circuit court erred as a matter of law by considering the improper aggravating factor that defendant unlawfully billed BCBS—a charge the jury found the State failed to prove—and by failing to consider any factor in mitigation. We disagree. The record shows that the court did not improperly weigh the statutory factors, nor did it refuse to consider mitigation. In imposing sentence, the court emphasized:

> "To be clear, the conduct that needs to be prevented is the fact that this Defendant was a licensed DUI provider and refused to fulfill his obligations to his patients and, thereby, put the citizens of DuPage County in serious danger and his clients in serious danger by failing to maintain his responsibility to help and counsel those who were under his care.

> Though not argued by the Defendant, I have looked at the factors in mitigation and I have considered those as well. Looking specifically at 730 ILCS 5/5-5-3.1(a), I do not find any of the factors to be present; and I have looked at and considered the entirety of the statute."

¶ 82          Here, the court appropriately considered the factors in aggravation and mitigation, and defendant failed to establish that the sentence imposed varies greatly from the spirit of the forgery

31

statute or is manifestly disproportionate to the fraudulent nature of the offense. Thus, we find no error, let alone plain error, in the court's imposition of an aggregate eight-year term.

¶ 83                                    III. CONCLUSION

¶ 84        The judgment of the circuit court of Du Page County is affirmed.

¶ 85        Affirmed.